IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | |
|---|---|
| ACTION MARINE, INC., *et al.*, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | CASE NO. 3:01-cv-994-MEF |
| ) | |
| CONTINENTAL CARBON, INC., *et al.,* ) | (WO- Not Intended for Publication) |
| ) | |
| Defendants. ) | |

**MEMORANDUM OPINION AND ORDER**

This cause is before the Court on the Defendants' Motion for Judgment as a Matter of Law or, in the Alternative, Motion for New Trial or, in the Alternative, Motion for Remittitur (Doc. # 248) filed on February 14, 2005. The Court has carefully considered the Brief in Support of Defendants' Motion for Judgment as a Matter of Law or, in the Alternative, Motion for New Trial or, in the Alternative, Motion for Remittitur (Doc. # 281) filed on April 20, 2005 and the Plaintiffs' Opposition to Defendants' Motion for Judgment as a Matter of Law or, in the Alternative, Motion for New Trial or, in the Alternative, Motion for Remittitur (Doc. # 290) filed on May 20, 2005. For the reasons set forth in this Memorandum Opinion and Order, the Defendants' Motion for Judgment as a Matter of Law or, in the Alternative, Motion for New Trial or, in the Alternative, Motion for Remittitur (Doc. # 248) is due to be DENIED.

**BACKGROUND**

On August 13, 2001, Action Marine, Inc. (hereinafter "Action Marine") a Georgia business, and its owner John Tharpe (hereinafter "Tharpe") filed suit in this Court[1] against Continental Carbon Incorporated (hereinafter "Continental Carbon"), Barry Nicks[2] (hereinafter "Nicks"), Todd Miller (hereinafter "Miller"),[3] China Synthetic Rubber Corporation ("China Synthetic"), and Taiwan Cement Corporation (hereinafter "Taiwan Cement")[4] (hereinafter collectively referred to as "Defendants").  Action Marine's original complaint included the following claims: Negligence (Count I); Wanton Conduct (Count II), Breach of Duty to Warn (Count III); Fraud, Misrepresentation, and Deceit (Count IV); Nuisance (Count V); Trespass (Count VI); Common Law Strict Liability (Count VII); and Permanent Injunction (Count VIII).  Although, the Complaint stated that Action Marine brought this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure, this Court later denied Plaintiffs' request for class certification.

On January 22, 2002, Action Marine filed an Amended Complaint (Doc. # 28).  By this amendment, Action Marine added two additional named plaintiffs: the City of Columbus, Georgia (hereinafter "City of Columbus") and Phillips Homes, Inc. (hereinafter "Phillips

---

[1]   Action Marine invoked this Court's jurisdiction pursuant to 28 U.S.C. § 1332.

[2]   Nicks is incorrectly denominated in the Second Amended Complaint as Nix.

[3]   Action Marine alleged that Nicks and Miller were employees of Continental Carbon's Phenix City plant.

[4]   China Synthetic and Taiwan Cement are the parent corporations of Continental Carbon.

Homes"), a Georgia business. On February 14, 2002, Plaintiffs again amended their allegations by filing the Second Amended Complaint (Doc. # 34). The Second Amended Complaint added Owen Ditchfield (hereinafter "Ditchfield"), a citizen of Georgia as a named plaintiff to the action.

Defendants filed dispositive motions which were granted in part and denied in part. Plaintiffs abandoned some of their claims. On August 11, 2004, the trial of this cause began. Plaintiffs presented the following claims to the jury: nuisance, trespass, negligence, and wantonness. All parties agreed that the substantive law of Georgia applied to this case. The presentation of evidence and witnesses lasted for ten days. During this time, the jury heard testimony from both fact witnesses and expert witnesses. Some of that testimony was conflicting and necessarily required the jury to make credibility determinations. Defendants made a motion for judgment as a matter of law at the close of the Plaintiffs' case on the seventh day of the trial. The Court granted this motion in part and denied it in part. Defendants presented evidence in opposition to Plaintiffs' claims including its own fact witnesses and expert witnesses. Defendants renewed their motion for judgment as a matter of law at the close of their case in chief. The Court denied the renewed motion for judgment as a matter of law.

The Court asked the parties to submit proposed jury instructions and proposed verdict forms. The Court conducted a charge conference where the jury instruction and verdict forms were discussed with counsel. On the ninth day of trial, the Court instructed the jury

and they began their deliberations. The jury submitted several questions to the Court during their deliberations and the Court addressed all such questions after conferring with counsel.

On the tenth day of trial, the jury returned a verdict for Plaintiffs. In returning this verdict in favor of the Plaintiffs, the jury completed a nine page Verdict Form (Doc. # 216) and answered twenty special interrogatories. The jury awarded $1.2 million dollars in compensatory damages to Action Marine; $100,000 in compensatory damages to John Tharpe; $45,000 to Owen Ditchfield; and $570,000 to the City of Columbus, Georgia. After the verdict, Defendants orally renewed their motion for judgment as a matter of law. The Court denied the renewed motion for judgment as a matter of law.

After the return of the verdict on liability and compensatory damages, additional testimony was presented in support of Plaintiffs' claims for punitive damages and attorneys' fees. The Court provided the jury with further jury instructions and a verdict form addressing the punitive damages and attorneys' fees issues. The jury returned a verdict in Plaintiffs' favor. In returning this supplemental verdict on attorneys' fees and punitive damages, the jury competed a Supplemental Verdict Form (Doc. # 217) which required them to answer three specific interrogatories. The jury awarded Plaintiffs $17,500,000 in punitive damages and $1,294,000 in attorneys' fees[5] and specifically found that Defendants acted or failed to act with a specific intent to harm the Plaintiffs.

At the conclusion of the jury trial in this case, there still remained pending before this

---

[5] Attorneys' fees were awarded pursuant to O.C.G.A. § 13-6-11, and punitive damages were awarded pursuant to O.C.G.A. § 51-12-5.1.

4

Court Plaintiffs' claims for injunctive relief. This Court required further submissions on the issue of injunctive relief. Persuaded that injunctive relief was appropriate, but concerned that prior submissions failed to provide sufficient information to allow the Court to shape the injunctive relief, the Court required additional submissions on the injunctive relief. The parties negotiated a settlement of the injunctive claims and submitted a proposed order setting forth the injunctive relief to which they had agreed. In early July of 2005, this Court entered an injunction.

In addition to the post judgment motions now pending before this Court. The parties have been litigating some post judgment claims regarding sanctions against Defendants for conduct during pretrial discovery which was not discovered until after the conclusion of the trial. This Memorandum Opinion and Order will not touch on those sanctions because that matter has been referred to Magistrate Judge McPherson who, consistent with the practice of this district, is more intimately familiar with the course of discovery in this litigation and the patterns of the parties' conduct during discovery.

## DISCUSSION

### A. Motion for Judgment as a Matter of Law

A motion for judgment as a matter of law as to a particular issue should be granted when "there is no legally sufficient evidentiary basis for a reasonable jury to find for [the non-movant] on that issue." Fed. R. Civ. P. 50(a)(1); *Wood v. Green,* 323 F.3d 1309, 1312 (11th Cir. 2003). Thus, as the Eleventh Circuit has explained,

> [t]he jury's verdict must stand unless there is no legally sufficient evidentiary basis for a reasonable jury to find for that party on that issue. It is the jury's task – not ours – to weigh conflicting evidence and inferences, and determine the credibility of the witnesses. If reasonable jurors could reach different results, we must not second guess the jury or substitute our judgment for its judgment.

*Shannon v. Bellsouth Telecomms., Inc.,* 292 F.3d 712, 715 (11th Cir. 2002) (internal quotations and citations omitted.)

Defendants raise several arguments in support for their motion for judgment as a matter of law relating to the sufficiency of the evidence on various issues. This Court is not convinced by any of these arguments. The jury attentively listened to the witnesses and had an ample opportunity to review the exhibits during their deliberations and when they were published at trial. Moreover, the jury was carefully instructed on all of the applicable law and provided with a very specific verdict form. This Court is persuaded that there exists a legally sufficient evidentiary basis in support of every aspect of the jury's verdict challenged by Defendants in their current motion for judgment as a matter of law. Accordingly, to the extent that Defendants argue that they are entitled to judgment as a matter of law, their motion (Doc. # 248) is due to be DENIED.

**B. Motion for a New Trial**

Pursuant to Federal Rule of Civil Procedure 59(a)(1), a motion for a new trial may be granted as to all or any of the parties and on all or part of the issues tried to a jury "for any of the reasons for which new trials have heretofore been granted in actions at law in the

courts of the United States." In support of their alternative motion for a new trial, Defendants contend that the verdict rendered by the jury after this ten day trial is against the great weight of the evidence. The Court does not agree. To the extent that Defendants have argued that they are entitled to a new trial because any aspect of the jury's findings was against the great weight of the evidence or unsupported by the evidence, their motion for a new trial on those bases are due to be DENIED.

Defendants contend that they are entitled to a new trial due to purported errors within the jury charges, the verdict form, rulings on the admissibility of evidence, and a ruling requiring a witness to be produced at trial. (Doc. # 248 at ¶¶ 22-25) The Court has considered each and every one of these grounds and find them to be wholly without merit. Accordingly the motion for new trial is due to be DENIED to the extent that it is predicated on these grounds.

Defendants contend that the compensatory damages in this case are not supported by evidence. Defendants also contend that damages awarded to Action Marine are legally improper. (Doc. # 248 at ¶ 27). On these contention, they seek either a new trial or remittitur. The Court does not agree that the compensatory damage awards are legally flawed as Defendants contend. Accordingly, the alternative motions for new trial or remittitur on such arguments are due to be DENIED.

Defendants argue that the size of the punitive damage award and the "inflammatory rhetoric of Plaintiffs' counsel" compel the conclusion that the verdict in the second phase of

the trial was the produce of passion and prejudice. Based on this argument Defendants seek a new trial on punitive damages. The Court is not persuaded that Defendants are entitled to a new trial based on this argument. The punitive damage award is not grossly disproportionate to the compensatory damages award. Moreover, the Court does not agree with the Defendants' characterization of Plaintiffs' counsels' rhetoric in this case. The motion for a new trial on punitive damages is due to be DENIED.

**C. Motions Relating to Punitive Damage Awards**

Defendants contend that the punitive damages awarded by the jury in this case are improper and excessive. They ask this Court either to grant judgment as a matter of law on punitive damages, or to order a new trial on punitive liability, or to remit the punitive damages awarded. Defendants argue that their conduct does not satisfy the standard for the award of punitive damages under Georgia law, that the award should be reduced pursuant to § 51-12-5.1(g) of the Georgia Code, and that the punitive damages awarded were excessive under both Georgia law and the United States Constitution. The Court will address each of these arguments in turn.

**1. Georgia's Standard for the Imposition of Punitive Damages**

Section 51-12-5.1 of the Georgia Code controls punitive damages in tort actions under Georgia law. Punitive damages under this statute are intended solely to punish, penalize, or deter a defendant. Pursuant to O.C.G.A. § 51-12-5.1, punitive damages may only be awarded in tort actions in which it is proven by clear and convincing evidence that the defendant's

conduct showed willful misconduct, malice, fraud, wantonness, oppression, or an entire want of care which would raise the presumption of conscious indifference to consequences. Defendants contend that they are entitled to judgment as a matter of law or a new trial on punitive liability because the standard for the imposition of punitive damages was not met in this case. The Court disagrees. The jury was correctly instructed on the applicable law and heard sufficient evidence on which to base the award of punitive damages under Georgia law. Accordingly, Defendants are not entitled to judgment as a matter of law in Defendants' favor on Plaintiffs' claims for punitive damages. Moreover, Defendants are not entitled to a new trial because the Court is not persuaded that the jury's finding of punitive liability is against the weight of the evidence. Defendants' motions are due to be DENIED to the extent that they are based on these grounds.

**2. Georgia Code § 51-12-5.1(g)**

Under Georgia law, the maximum amount of money that a jury may award to any one plaintiff as punitive damages is limited to $250,000. *See* O.C.G.A. § 51-12-5.1(f) & (g). Georgia law does provide that punitive damages awards may exceed this cap if "it is found that the defendant acted, or failed to act, with the specific intent to cause harm." *Id*. If a jury finds that a defendant acted or failed to act with specific intent to cause harm, "there shall be no limitation regarding the amount which may be awarded as punitive damages...." O.C.G.A. § 51-12-5.1(f). The Court finds that the jury in this case was properly instructed on the imposition of punitive damages and that they answered a specific interrogatory which

9

affirming that they had found the specific intent to cause harm which under Georgia law presents a basis for sustaining a damage award in excess of the statutory cap. The Court does not agree that Plaintiffs failed to adduce sufficient evidence that Defendants acted with specific intent to harm Plaintiffs. The Court is not persuaded that the jury's factual determination of specific intent should be disturbed. Accordingly, the motion is due to be DENIED to the extent that Defendants contend that the punitive damage award should have been capped pursuant to Georgia law.

### 3. Analysis of Amount of Punitive Damages Under Georgia Law

Defendants contend that the punitive damage award is excessive and must be either vacated or remitted under Georgia law.

> In determining the reasonableness of an award of punitive damages [under Georgia law], courts should consider whether: (1) the misconduct caused personal injury or merely damage to property; (2) the actor's misconduct was active or passive; and (3) a rational relationship exists between the misconduct and the amount of the award.

*Lightning v. Roadway Express, Inc.,* 60 F.3d 1551, 1559 (11th Cir. 1995). Defendants' misconduct caused damage to property and the risk of personal injury, albeit a risk not realized by these Plaintiffs. Their misconduct was active. In this Court's view a rational relationship exists between the misconduct and the amount of the award. Having evaluated the reasonableness of the award in this case by evaluating the requisite factors, the Court is satisfied that the award is not unreasonable or excessive. Accordingly, the motion is due to be DENIED to the extent that it is predicated on the contention that the punitive damage

award is excessive under Georgia law.

### 4. Constitutional Principles of Due Process

Having addressed the issues relating to the appropriateness of the amount of punitive damages awarded under Georgia law, the Court will now consider whether the award satisfies the constitutional principles of due process. As an initial matter, the Court finds that both the statutes of Alabama, where Defendants' plant is located, and Georgia, where Defendants' emissions settled, express a strong interest in deterring environmental pollution. This interest supports a substantial punitive damage award.

"In our judicial system compensatory and punitive damages, although usually awarded at the same time by the same decisionmaker, serve different purposes." *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408 (2003) (internal citation omitted). Whereas "[c]ompensatory damages are intended to redress the concrete loss that the plaintiff has suffered by reason of the defendant's wrongful conduct . . . punitive damages serve a broader function; they are aimed at deterrence and retribution." *Id*. (internal citations and quotations omitted). For this reason, there are procedural and substantive constitutional limitations on the imposition of punitive damages; namely, the "Due Process Clause of the Fourteenth Amendment prohibits the imposition of grossly excessive or arbitrary punishments on a tortfeasor." *Id*. at 416. *See also BMW v. N. Am., Inc. v. Gore*, 517 U.S. 559, 568 (1996) ("Only when an award can fairly be categorized as 'grossly excessive' in relation to [the state's] interests does it enter the zone of arbitrariness that violates the Due Process Clause

of the Fourteenth Amendment.").

In reviewing punitive damages awards to ensure that they are based upon an "application of law rather than a decisionmaker's caprice," the United State Supreme Court instructs courts to consider three guideposts: (1) the degree of reprehensibility of the defendant's misconduct; (2) the disparity between the actual or potential harm suffered by the plaintiff and the punitive damages award; and (3) the difference between the punitive damages awarded by the jury and the civil penalties authorized or imposed in comparable cases. *State Farm*, 538 U.S. at 418. In *State Farm*, the Supreme Court addressed each guidepost in some detail and concluded that the jury's punitive award of $145 million on a $1 million compensatory judgment "was neither reasonable nor proportionate to the wrong committed, and it was an irrational and arbitrary deprivation of the property of the defendant."

The Supreme Court has described the first guidepost– the degree of reprehensibility of the defendant's conduct– to be the "'most important indicium of the reasonableness of a punitive damages award.'" *Id*. at 419. (quoting *Gore*, 517 U.S. at 575). In *State Farm*, the Supreme Court explained:

> We have instructed courts to determine the reprehensibility of a defendant by considering whether: the harm caused was physical as opposed to economic; the tortious conduct evinced an indifference to or a reckless disregard of the health or safety of others; the target of the conduct had financial vulnerability; the conduct involved repeated actions or was an isolated incident; and the harm was the result of intentional malice, trickery, or deceit, or mere accident. The existence of any one of these

12

> factors weighing in favor of a plaintiff may not be sufficient to sustain a punitive damages award; and the absence of all of them renders any award suspect. It should be presumed a plaintiff has been made whole for his injuries by compensatory damages, so punitive damages should only be awarded if the defendant's culpability, after having paid compensatory damages, is so reprehensible as to warrant the imposition of further sanctions to achieve punishment or deterrence.

*Id.* (citations omitted). Unmistakably, some types of conduct are more reprehensible than others and therefore more deserving of a substantial punitive damages award. *Gore*, 517 U.S. at 575. For example, negligent conduct is less reprehensible than intentional misconduct, and infliction of economic harm is less reprehensible than infliction of physical harm. *Id*. at 576. Admittedly, the harm inflicted in this case was economic rather than physical. On the other hand, a pattern of misconduct is more reprehensible than individual acts of wrongdoing. *Id*. at 576-77. The evidence before the jury established a pattern of intentional misconduct on the part of the defendants leading to repeated damage to Plaintiffs' property. This misconduct included bolstering profits rather than remedying known defects with production systems which caused known emissions of carbon black and a less than honest approach to their dealings with Plaintiffs and others damaged by Defendants' conduct. Additionally, the tortious conduct by Defendants evinced an indifference to or a reckless disregard of the health or safety of others given the nature of the materials being put into the environment. While none of Plaintiffs have a claim in this case for physical injury, the Court cannot ignore that emissions of carbon black can pose serious health risks. After considering all of the relevant factors, the Court find that Defendants' culpability is so reprehensible as

to warrant the imposition of further sanctions, after having paid compensatory damages, to achieve just punishment and adequate deterrence.

Turning to the second guidepost, the Supreme Court has been reluctant to "identify concrete constitutional limits on the ratio between harm, or potential harm, to the plaintiff and the punitive damages award." *State Farm*, 538 U.S. at 425. Although declining to impose a bright-line ratio which a punitive damages award cannot exceed, the Court has recognized that, "in practice, few awards exceeding a single-digit ratio between punitive and compensatory damages, to a significant degree, will satisfy due process." *Id*. Citing a long history of providing sanctions of double, treble, or quadruple damages to deter and punish, the Court stated in *State Farm*:

> While these ratios are not binding, they are instructive. They demonstrate what should be obvious: Single-digit multipliers are more likely to comport with due process, while still achieving the State's goals of deterrence and retribution, than awards with ratios of 500 to 1 [as in *Gore*], or in this case, of 145 to 1.
>
> Nonetheless, because there are no rigid benchmarks that a punitive damages award may not surpass, ratios greater than those we have previously upheld may comport with due process where a particularly egregious act has resulted in only a small amount of economic damages. The converse is also true, however. Where compensatory damages are substantial, then a lesser ratio, perhaps only equal to compensatory damages, can reach the outermost limit of the due process guarantee. The precise award in any case, of course, must be based upon the facts and circumstances of the defendant's conduct and the harm to the plaintiff.

*Id*. (quotation marks and citations omitted). "In sum, courts must ensure that the measure of

14

punishment is both reasonable and proportionate to the amount of harm to the plaintiff and to the general damages recovered." *Id*. at 426. In this Court's view, the punitive damage award is rationally based on the evidence presented to the jury at trial and intended to punish Defendants in a reasonable and proportionate way. The Court further finds that in light of the evidence the ratio of punitive damages to compensatory damages comports with due process.[6]

Under the third guidepost, the Court analyzes the disparity between the punitive damages awarded by the jury in this case and the civil penalties authorized or imposed in comparable cases. "Whether a defendant had constitutionally adequate notice that his conduct might result in a particular damage award depends in large part upon the available civil and criminal penalties the state provides for such conduct." *See, e.g., Johansen,* 170 F.3d at 1337. There may be a lack of adequate notice to the defendant "if the difference between the civil or criminal penalties that were or could have been imposed and the punitive damage award is too great." *Id.* Of course, this Court is mindful that this third guidepost is

---

[6] This case involves a single digit multiplier. The ratio of punitive damages to compensatory damages is 9.14:1. The Court notes that in its view the facts of this case could have supported an even higher multiplier. In *Johansen v. Combustion Eng'g, Inc.,* 170 F.3d 1320 (11th Cir.), *cert. denied,* 528 U.S. 931 (1999), the Eleventh Circuit Court of Appeals upheld a punitive award of $4.35 million dollars, which was around 100 times the amount of actual damages awarded by the jury, because this amount was "justified by the need to deter this and other large organizations from a 'pollute and pay' environmental policy." 170 F.3d at 1339. The Eleventh Circuit noted that the defendant in *Johansen* was "a large and extremely wealthy international corporation" and that sometimes a "bigger award is needed to attract the ... attention of a large corporation" in order to promote deterrence effectively. *Id.* at 1338 (internal quotation marks omitted). Thus, a strong state interest in deterrence of a particular wrongful act may justify ratios higher than might otherwise be acceptable. *Id.*

"accorded less weight in the reasonableness analysis than the first two guideposts." *Kemp v. Am. Tel. & Tel. Co.,* 393 F.3d 1354, 1364 (11th Cir. 2004).

Defendants ask the Court to compare the $17.5 million punitive damage award to the civil penalties that could have been imposed by the Alabama Department of Environmental Management ("ADEM") for air pollution pursuant to Alabama Code §§ 22-22A-4 and 22A-5.[7] According to Defendants, those statutes impose a $250,000 cap on the "total penalty [that is] assessed in an order issued by the department." Ala. Code § 22A-5(18)c. Defendants argue that given they have not received a civil penalty from ADEM, the disparity between the punitive damage award and the possible fine by ADEM confirms that they lacked fair notice, as due process requires, that they could be subject to a penalty such as the punitive damages awarded in this case.

In *Johansen,* a case involving nuisance and trespass claims by landowners against a mining company for acidic water that had escaped from the mining operation, the Eleventh Circuit Court of Appeals approved a punitive damage award that was 400 times greater than the fine the mining company had received and 100 times greater than the maximum penalty that could have been imposed. 170 F.3d at 1337-39. In light of this precedent, the Court is satisfied that the possible civil penalty under Alabama law of $250,000 provided Defendants with adequate notice that their conduct could result in a substantial penalty for pollution. Indeed, it would seem that even if a much larger punitive damage award had been returned

---

[7] Defendants did not receive fines from ADEM. There was testimony and evidence presented at trial that Defendants were "tipped off" by ADEM prior to plant inspections.

16

by the jury, this factor would have supported finding that it did not offend due process.

In sum, the Court finds that the facts of this case clearly support a very significant award of punitive damages. The Court cannot find on the record before it that the punitive damages award in this case is unconstitutionally excessive. This Court does not agree with Defendants' contention that the punitive damages award offends due process. Accordingly to the extent that Defendants' motion seeks a new trial, remittitur, or any other reduction of the punitive damages award in this case, their motion is due to be DENIED.

## CONCLUSION

The Court has carefully considered the evidence in this case and the arguments in support of and in opposition to the instant motion pursuant to the applicable legal standards. It is hereby ORDERED that Defendants' Motion for Judgment as a Matter of Law or, in the Alternative, Motion for New Trial or, in the Alternative, Motion for Remittitur (Doc. # 248) is DENIED.

DONE this the 23rd day of January, 2006.

/s/ Mark E. Fuller
CHIEF UNITED STATES DISTRICT JUDGE