IN THE UNITED STATES DISTRICT COURT FOR
THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

ACTION MARINE, INC., *et al.*,      )
                                    )
          Plaintiffs,               )
                                    )
v.                                  )      CIVIL ACTION NO. 3:01cv994-MEF
                                    )
CONTINENTAL CARBON COMPANY,         )
INC., *et al.*,                     )
                                    )
          Defendants.               )

## RECOMMENDATION OF THE MAGISTRATE JUDGE

This cause is now before the Court on the Plaintiffs' (collectively, "the property

owners")[1] objections and motion to reconsider the magistrate judge's order denying

sanctions (Doc.  346).  The district court instructed the magistrate judge to consider "[a]ll

issues relating to the appropriateness of monetary sanctions against defendants

(collectively, "Continental")[2] raised by plaintiffs' motions (Doc. 293, Doc. 308, Doc.

---

[1]"The property owners" include the City of Columbus, Georgia ("the City"), Action Marine, Inc.
("Action Marine"), a retail boat sales and maintenance business, John Tharpe ("Tharpe"), sole owner of
Action Marine, Owen Ditchfield ("Ditchfield"), owner of a residence and rental home in the area.
Ditchfield was added as a class representative, but the district court denied class certification.  Ditchfield,
however, remained in the case as a party plaintiff.

[2]"Continental" includes Continental Carbon, Inc., ("CCC") and its parent corporation, China Synthetic
Rubber Corporation ("CSRC").  Summary Judgment was granted in favor of the additional defendants
Taiwan Cement Corporation ("Taiwan"), Barry Nicks ("Nicks") and Todd Miller ("Miller").

308-1)[3] and all submissions in support of plaintiffs' requests for monetary sanctions as a penalty for alleged discovery violations" (Doc. 347).

Both parties have been given notice as to the discovery violations, have been given great latitude in their presentation of the issue of monetary sanctions, and have argued their positions at several evidentiary hearings held on January 19, 2005 ("Tr1") , August 18, 2005 ("Tr 2") (*sealed* in part) and November 10, 2005 (Doc. 349), extending over a period of three days.  In addition, this court has reviewed in detail all of the exhibits produced by both the property owners and Continental in response to this court's previous orders, taken into consideration Continental's assertions as to attorney-client privilege, and has taken judicial notice of the entire record for purposes of this motion.  Thus, fully illuminated by the parties, and taking into consideration the briefs and arguments of the parties, recommendation is made to the district court.

Upon consideration of this matter, as further set forth herein, it is the recommendation of the magistrate judge that the motion for monetary sanctions be GRANTED.

---

[3]**Doc. 293** is the brief in support of property owners' Motion to Supplement the Trial Court Record with Evidence Wrongfully Withheld by Defendants from Pretrial Discovery.  **Doc. 293-1** refers to 19 analytical charts provided by property owners, Charts A through S, which coincide with Exhibits A through S ("the PT documents") appended to the property owners' motion to supplement the trial court record (Doc. 293-1, Doc. 317). **Doc. 308** is the property owners' Supplemental Motion for Sanctions and Submission Pursuant to Magistrate Judge McPherson's Order of September 9, 2005.  **Doc 308-1** is the property owners' Time Records for matter involving property owners' requests for sanctions.

# I. BACKGROUND

The court will briefly review the history of this case to provide a sense of perspective before assessing the property owners' motion for reconsideration regarding monetary sanctions.  Below is a discussion of the underlying dispute and the discovery battles that ensued for almost three-and-a-half years before this case was brought to trial.

## A.    *Factual allegations*

In August of 2001, the City, Action Marine and Tharpe brought a class action lawsuit for negligence, wanton conduct, breach of duty to warn, fraud, misrepresentation, deceit, nuisance, trespass, and strict liability.[4]  The property owners claimed that emissions from CCC's Phenix City, Alabama plant damaged their property and health.  It was alleged that 200 million pounds of a substance known as "carbon black," and its associated waste gases, were emitted annually exposing surrounding residents to the toxins from the gases, and their property to dustings of the black and sticky carbon black substance.  The City claimed damage to the Columbus Civic Center, the South Commons Sports and Entertainment Complex as well as Rigdon Park.  Action Marine and Tharpe claimed damage to its inventory of boats and for the lost value of its business.  Ditchfield sought damages for emotional distress, cleanup costs and for the diminution in value of his properties.  In response, CCC claimed that no such pollutants were harmfully emitted

---

[4]Subsequently, the district court granted summary judgment dismissing the claims of fraud, misrepresentation, deceit and strict liability, as well as the City's and Action Marine's claims for emotional distress.  Remaining were the claims of negligence, wanton conduct, nuisance and trespass.

from its plant to cause the property owners' damage.  CSRC claimed that it did not exercise supervision and control over CCC, and as a result, were not directly liable to the property owners for any pollution from the plant.

Trial was held for ten days in August of 2004.  The jury found Continental liable for nuisance, trespass, negligence, wanton and wilful conduct, and awarded compensatory damages in the amounts of $1.2 million to Action Marine, $570,000 to the City, $100,000 to Tharpe and $45,000 to Ditchfield.  The jury also awarded $1,294,000 in attorneys fees and assessed punitive damages in the amount of $17.5 million.  Final judgment was entered on January 31, 2005, and costs were taxed against Continental.[5]   The judgment was appealed, and the Eleventh Circuit Court of Appeals upheld the verdict.[6]

B.     *Pertinent discovery history*

Over the course of this hotly-contested litigation, requests for production of documents, interrogatories, requests for admissions, deposition requests and many court orders were generated in connection with fleshing out the pertinent facts associated with the allegations brought by the property owners in this case.  The property owners in their brief, and at the three hearings, as well as in many motions, outlined in detail the pertinent discovery requests made, and Continental's response to those requests.  In response to this court's request to docket the alleged documents wrongfully withheld, the magistrate judge

---

[5]Reserved to the court was the issue of injunctive relief (*See* Doc. 226-7, 299).

[6]Continental has expressed its intent to appeal to the Supreme Court.  *See* website: http://www.wtvm.com/Global/story.asp?S=6592641.

directed the property owners to submit the 19 individualized analytical charts, labeled

Charts A through Chart S (consisting of 285 typewritten pages), to assist in the review of

the alleged pretrial discovery abuses (Doc. 316).  These Charts (Doc. 317, collectively the

"PT charts") coincide with the actual documents withheld, Exhibits A through S (Doc.

293, collectively the "PT documents").

The initial disclosure request of November 30, 2001, was general and asked for

plant and equipment related documents, production and communications records relating

to production of carbon black at the plant, and product data and installation records

relating to equipment used to manufacture carbon black.  The subsequent discovery

requests became more specific.  The PT charts outlined certain documents that were

requested, but not disclosed, by the property owners prior to trial.

Chart A traced violations back to some of the original document requests

generated in this case:

*1.     December 13, 2001: Property Owners' Requests for Production*

Request 8 asked Continental to:

Produce copies of *any and all internal memos, emails, or any other type of
communication discussing carbon black dust emissions or pollution*, either
internally or with third parties, and complaints from citizens surrounding
the Phenix City Continental Carbon plant ["the plant"].

Request 13 asked Continental to:

Produce copies of any *logs and/or monitoring reports and/or summaries
relating to emission control*, or prevention of emission of carbon black
particulate matter into the environment from [the plant].

Request 16 asked Continental to:

Produce "*plant and equipment related documents . . . data relating to the equipment currently used to manufacture carbon black . . .* [and] installation records relating to equipment installed at [the plant].

(Doc. 317-2, pp. 1-2, *emphasis supplied*).

Continental's response to requests (8) and (16) was that the requests were overly broad and unduly burdensome and , to request (13) that it was vague and unclear, but that CCC would "produce such documents that are responsive to this request and that have been located after a reasonable review of corporate records." As to other responses, CCC would supply documents after "entry of an appropriate protective order" (Doc. 317-2, p. 6-7).

      2.    *January 28, 2003: Property Owners' Second Consolidated Discovery Requests*

In light of the original documents received, the property owners asked for certain admissions in their second consolidated request. Those included admissions that (1) CCC experienced problems with its bag filter systems at the plant, (2) CCC had frequent bag filter failures, and (3) bag filter failures resulted in carbon black emissions. In addition, the property owners requested further documents.

Request 3 asked Continental to:

Produce copies of all cost estimates, reports, executive summaries, or evaluations for continenal [*sic*] Carbon Company concerning environmental issues and improvements for the bag filter compartments at the Phenix City plant from 1998 to the present.

6

Request 4 asked Continental to:

Produce all emails within Continental Carbon Company concerning economic justification and/or economic evaluation of improvements to the main bag filter system bag filters, and filter bags at [the plant] from 1998 to the present.

Request 5 asked Continental to:

Produce all studies, reports and evaluations of carbon black leaks, spills, or discharges occurring as a result of reported, broken or torn bag filters or filter bags at [the plant].

(Doc. 317-2, p. 3).

The requests in Chart A established that the property owners requested (1) internal memorandum, emails, or any other type of communication discussing carbon black dust emissions or pollution, either internally or with third parties, (2) logs and/or monitoring reports and/or summaries relating to emission controls, or prevention of emissions of carbon black particulate matter into the environment from the plant, (3) data relating to the equipment currently used to manufacture carbon black, and installation records relating to equipment installed at the plant, (4) cost estimates, reports, executive summaries for improvements for the bag filter compartments at the Phenix City plant, (5) economic justification and/or economic evaluation of improvements to the main bag filter system bag filters, and filter bags at the plant, and (6) studies, reports and evaluations of carbon black leaks, spills, or discharges occurring as a result of reported, broken or torn bag filters or filter bags at the plant.  The discovery violations addressed in this

recommendation emanate primarily from the above requests.

In response to these requests, Continental identified that it produced records pertaining to maintenance, repair and design of equipment used in the carbon black production process, including bag filter compartments and related equipment (Doc. 317-2, p. 1-4).   Yet it also claimed the property owners' requests were vague, ambiguous and unintelligible in using "bag filter" and "filter bag" as separate terms; burdensome, oppressive, vague, ambiguous, and/or overly broad as to time period and scope; and that the information was not relevant to the subject matter of the litigation and not reasonably calculated to lead to the discovery of admissible evidence.   Continental objected to other requests on similar grounds (Doc 317-2, p. 7-9).

The property owners brought motions to compel on February 18 and March 13, 2003 (Docs. 92, 98).  On March 18, 2003, the court advised that failure to properly respond to discovery requests in good faith could lead to sanctions (Doc. 101).  On April 11, 2003, the court ordered supplementation of Rule 26 disclosures and ordered the retention of all records in the parties' possession throughout the pendency of the litigation (Doc. 111).

On March 25, 2003, the property owners brought motions to (1) compel discovery responses and for an order compelling corporate representatives for deposition, (2) reported to the court on outstanding discovery issues, and (3) prepared a brief in support of it motions (Docs. 104, 105, 106, 109).  Discovery status conferences were held on

March 28, 2003 (Doc. 107), and April 4, 2003 (Doc. 110, placed under *seal*).   On April

4, 2003, the court ordered the parties to supplement their Rule 26 disclosures (Doc. 117).

Document inquiries were made by interrogatories prior to the depositions of the

president of CSRC, Dr. Peter Wu ("Wu") on April 21, 2003, again addressing emails,

documents, memoranda, reports, notes, letters, or communications of any and all kinds

that he prepared, received or reviewed pertaining to CCC's environmental matters, capital

or operational expenditure proposals and/or plant equipment problems.   Wu's response

was "I do not receive detailed operation reports pertaining to environmental matters or

plant equipment problems at the Phenix City plant" (Doc 317-2, p. 10).   Continental

fought to prevent answers to the property owners' inquiries to Wu by arguing later at

hearing that disclosures by interrogatories could only be addressed to party defendants.

On April 11, 2003, Continental was ordered to produce corporate representatives,

Kim Pan ("Pan"), Leslie Ku ("Ku") and Wu for depositions (Doc. 112).   On April 14,

2003, the magistrate judge allowed in her order for the property owners to propound 10

written interrogatories on Ku and Wu, and that these individuals should respond on or

before May 5, 2003 (Doc. 113).   As of September 4, 2003, Pan's deposition had not been

completed because Continental had not disclosed documents requested for deposition

which included the weekly/monthly operations reports concerning environmental issues

with CCC.   Continental continued to refuse to schedule the deposition of Wu, and other

employees and officers.   Though they were requested in the property owners' motion of

March 25, 2003, requests for expenditure reports ("RFE's"), regarding pollution controls, had not been produced.  In addition, the *in-camera* documents still had not been produced at this time (Doc. 132).  The district judge denied the property owners' motions regarding discovery issues until class certification had been decided (Doc. 148).  After the class certification was denied, the property owners renewed their motions to compel the depositions of Pan and Rodriguez, and this motion was granted on February 21, 2004 (Doc. 165).

On April 29, 2003, a hearing was held *in camera* and under *seal* because the property owners had obtained documents from non-party sources that were not previously disclosed by Continental (*See*, Doc. 117, p. 2, *in camera* Docs. P-1 through P-106).  The property owners claimed that the subject documents supported its claim in prior motions that Continental intentionally suppressed documents going directly to issues that Continental had denied, including:

(a)     The company's knowledge of the discharge of carbon black dust on the surrounding community;

(b)     The causes of the problem;

(c)     The names of those persons with knowledge of the environmental and operational problems at the plaint [*sic*];

(d)     Proposed cures and remedies for the pollution, operation and environmental problems;

(e)     Delays in implementing corrections to the plant's operational and environmental problems; and

(f)     The costs involved correcting operational and environmental problems versus delays in making the corrections.

10

(Doc. #117, p. 3).

The documents were placed under *seal* so that Continental was prevented from tailoring its responses so as to produce only those documents already in the possession of the property owners. The same documents were later offered for evidentiary submission by the property owners in response to Continental's Motion for Summary Judgment that was based in part upon Continental's assertion that CSRC "played no role" in the daily operations of CCC (Doc. 120, p. 2). At that point, the *sealed* documents still had not been produced by Continental.

The property owners requested another set of documents prior to the deposition of the president of CCC, Pan, on February 10, 2004. The property owners requested (1) all reports evaluating or explaining problems of any type of bag filters at the plant, and all reports of pollution, emissions, or fugitive releases of carbon black at the plant directed to management of CCC in Houston or to CSRC, (2) RFEs, executive summaries that pertained to the same, and (3) studies, reports and evaluations of carbon black leaks, spills, or discharges occurring as a result of reported, broken or torn bags at the plant. Similar documents were requested prior to the deposition of the Vice President of Operations for CCC, Juan Rodriguez ("Rodriguez") (Doc. 317-2, p. 3-6). On February 12, 2004, Continental was compelled to allow the depositions of Pan and Rodriguez (Doc. 165). Discovery cut-off was set for June 18, 2004 (Doc. 162). Issues of summary judgment were decided on June, 25, 2004 (Doc. 175).[7]

---

[7]*See* Footnotes 2 & 4.

In light of the property owners' renewed motion to compel discovery, and after a hearing on the matter before the magistrate judge on August 6, 2004, the court granted plaintiff's motion to compel discovery of "redacted" documents, thermal oxidizer data, Triboguard readings, documents from the privilege log, predecessor documents, and to produce certain witnesses for trial (Doc. 192).  Acutely aware of the discovery struggles that had taken place over the prior years, and responding to the Continental's objections to and appeal from the magistrate judge's August 6, 2004 order compelling discovery of a host of documents not yet provided, or provided only in part (redacted documents), the district court gave a final pre-trial warning in its order of August 10, 2004:  "*The parties are hereby advised that failure to fully comply with the letter and spirit [of this Order] will result in the imposition of sanctions which will be swift in coming and painful in execution*" (Doc. 195, *emphasis supplied*).

The district judge overruled Continental's objections as to this order on August, 10, 2004, with another warning from the court as to cooperation (Doc. 195).  Trial began on August 11, 2004.

Subsequent to trial, the property owners requested injunctive relief in accordance with the favorable judgment awarded by the jury.  Permanent injunctive relief was granted on January 31, 2005, and a new discovery schedule was issued on all issues relating to the nature and scope of the injunctive relief.  Responding to this issue, Continental submitted certain supplemental evidence.

12

The district court, in an order dated January 31, 2005, denying the property owners' request to strike certain documents from the post-judgment consideration of injunctive relief, made this commentary as to Continental's conduct:

> Defendants' admitted failure to comply with the letter and the spirit of the Federal Rules of Civil Procedure regarding discovery is deeply troubling to this Court. Indeed, given that *Defendants and their counsel have exhibited what can only be described as a pattern of disregard for the Federal Rules of Civil Procedure concerning discovery and this Court's prior discovery orders, the Court firmly believes that Defendants and their counsel are due to suffer some adverse consequences for their conduct.* Despite this belief, the Court cannot find that the sanctions requested by Plaintiffs may be imposed pursuant to Rule 37(c)(1).

(Doc. 238, *emphasis supplied*; *see also* Doc. 293).

The property owners alleged that between March 28 and April 6, 2005, Continental produced 98,939 pages of documents that were both responsive to the property owners' new discovery requests, and which were discovered in a related state case filed in the Circuit Court of Russell County, Alabama (Doc. 293, p. 2).[8]  Continental then produced another array of documents in May of 2005.  All told there were over 100,000 pages of documents subsequently disclosed post-trial (Doc. 349:6).  After reviewing the documents submitted by Continental, the property owners brought a motion claiming that Continental was now producing PT documents that they had never seen before, and which should have been provided prior to trial (PT documents, Exhibits A

---

[8]*See Riley, et al. v. Continental Carbon, et al.*, 3:04-CV-712-MHT.

through S; *see also* PT Charts A through S).  The property owners argue that this small

batch of undisclosed documents was used to demonstrate Continental's intentional

scheme to withhold large categories of documents (Doc. 349:7).  Exhibits A through O

involve a series of communications concerning a policy established by Continental as

early as February of 2004 to withhold documents.  The documents were offered to

establish that top officials at CCC and CSRC agreed to hide evidence of environmental

issues by filtering them though outside counsel, Tony Ching ("Ching"), for the purpose of

claiming attorney-client privilege. Among the property owners requests were  "any

additional or further sanctions against Continental that the Court deems appropriate under

the circumstances" (Doc. 230).[9]

    The district court made further commentary as to Continental's actions in their

order of August 19, 2005.  At that juncture, the property owners' had requested that the

court supplement the record with the PT documents for purposes of Continental's appeal:

> The Court held a hearing on this matter on August 18, 2005.  *Defendants*
> *have established a pattern of conduct during the course of this litigation*
> *which is far from exemplary. In this Court's view their admitted decision to*
> *stop supplementing prior discovery responses or disclosures as of the end*
> *of December of 2003 cannot be justified as good faith compliance with*

---

[9]*See also* related motions: **Doc. 273** (First Motion to Compel Post Trial Discovery); **Doc. 287**
(Supplemental Evidentiary Submission (Based on Newly Discovered Evidence) In Support of Plaintiffs'
(273) Motion to Compel Discovery Responses); **Doc. 293** (Brief in Support of Plaintiff Motion to
Supplement the Trial Court Record with Evidence Wrongfully Withheld by Defendants from Pretrial
Discovery); **Doc. 297** (Order to Supplement the Trial Court Record with Evidence Wrongfully
Withheld); **Doc. 299** (Plaintiff's Brief in Support of Motion - with 19 Exhibits); **Doc. 306** (Order denying
Motion to Supplement Trial Court Record); **Doc. 308** (Supplemental Motion for Monetary Sanctions).

*either the orders of this Court or the letter and the spirit of the Federal Rules of Civil Procedure.* As this Court has previously observed, given that Defendants and their counsel have exhibited what can only be described as a pattern of disregard for the Federal Rules of Civil Procedure concerning discovery and this Court's prior discovery orders, the Court firmly believes that Defendants and their counsel are due to suffer some adverse consequences for their conduct.

(Doc. 306, *emphasis supplied*).

In the same order, the court referred the matter to the magistrate judge for a ruling on monetary sanctions. The magistrate judge directed the property owners to provide a definitive sum as to sanctions, and to itemized attorney fees and expenses. In the property owners supplemental motion (Doc. 308, 308-1), they addressed the issue of monetary sanctions and provided an itemization of cost and attorney fees incurred in pursuing the post-trial motion regarding evidence wrongfully withheld. On November 10, 2005, the magistrate judge conducted a hearing on the property owners' supplemental motion. The property owners admitted additional exhibits containing other documents which Continental failed to produce prior to trial (Exhibits "Z," "AA" and "DD", Doc. 349:12-16).

These additional documents were produced to prove the connection between CCC and CSRC. Exhibit "Z" was an email to president Pan of CCC, and president Wu of CSRC (it was also sent to attorney Ching), suggesting a scheme to withhold evidence by routing documents through Ching. At the hearing, defense counsel for Continental affirmatively represented that no legal advice was sought or given in response to these

15

documents (Doc. 349:32).  Exhibit "DD" is a report that compiles monthly data of

environmental problems relating to every single plant CSRC parented, including CCC

(Doc. 349:15-17).  Continental claimed "AA" was not in existence at the time of trial.

At the November 10, 2005 hearing, the parties stipulated to a $250 per hour rate

for attorney fees (Doc. 319, 346), and the property owners filed itemized statements

regarding the hours spend post-trial in their attempt to have the PT documents (1) struck

from the record in the court's consideration of injunctive relief, (2) allowed to supplement

the trial court's record for purposes of appeal, and (3) for purposes of monetary sanctions.

The first two types of relief have been denied by prior orders of the court (Doc. 238, 306).

Since the district court granted the property owners' motion for reconsideration of the

magistrate judge's order of October 20, 2006, as it did not address monetary sanctions,

this court now addresses that issue pursuant to the district court's mandate (Doc. 347).

## II. ANALYSIS

A.    *The property owners' argument for sanctions*

The property owners seek sanctions pursuant to the Federal Rules of Civil

Procedure Rule 37 for Continental's deliberate failure to conceal information during the

course of this litigation, and particularly, prior to trial.  The property owners became

aware of the PT documents with post-judgment disclosures, and by disclosures made by

16

Continental in the related case filed on March 1, 2004.[10]  The property owners claim that Continental produced emails describing an elaborate internal communication and document delivery scheme between defendant CSRC and CCC that was solely designed to keep discoverable information from the property owners and their counsel prior to trial. The property owners argue that the PT documents should have been produced long ago in response to its numerous discovery requests and motions, many of which were reduced to orders to compel discovery against Continental.   Asserting prejudice because the PT documents were not available for review before the Eleventh Circuit Court of Appeals,[11] the property owners requested sanctions in an amount equal to the judgment,[12] or in the alternative, that monetary sanctions should include all attorneys' fees and expenses incurred by the property owners, in addition to the time and effort spent by this court, in addressing Continental's pattern of disregard for the Federal Rules of Civil Procedure, including violations of this court's prior discovery orders.  They argue "[u]nless such penalty is imposed against the defendants in the form of monetary sanctions, the integrity of the judicial process will be greatly diminished and the defendants will consider themselves free to offend that process again in the future" (Doc. 346, p. 10-11).

B.     *Continental's argument against sanctions*

----

[10]*See supra* at note 8.

[11]This argument is rendered moot by the 11th Circuit's affirmance of the judgment.  The case, however, has not yet come to rest, and it is postured for an appeal to the Supreme Court (*See supra*, at note 6).

[12]This argument was essentially rejected by Magistrate Judge McPherson at the hearing on November 10, 2005 (Doc. 349:4).

Continental contends that Rule 37(a)(4)(A) is not applicable because the PT documents were not produced pursuant to a motion to compel, rather, the PT documents were produced to different property owners in response to different document requests in another case against the same defendants.  Counsel for Continental claimed at the hearing on August 18, 2005, that Exhibits A through S were produced in the *Riley* litigation in Alabama state court, and not in this case.  In a similar argument, after admitting that it had an obligation to produce certain documents and supplement its discovery responses, Continental argued that even if some of the PT documents should have been disclosed, that the error was harmless because the property owners prevailed at trial.  Essentially, what Continental purports is, as long as the property owners prevailed, it does not matter if Continental cheated in its' attempt to win.  Continental also claimed in its' responses that certain documents were subject to attorney-client privilege.  Finally, Continental argues in its brief that Rule 37 does not apply to evidence discovered post-trial.

C.      *Rule 37*

Rule 37 governs sanctions for a party's failure to disclose required discovery information.  It states as follows:

> A party that *without substantial justification* fails to disclose information required by Rule 26(a) or 26(e)(1), or to *amend a prior response* to discovery as required by Rule 26(e)(2), is not, unless such failure is harmless, permitted to use as evidence at trial, at a hearing, or on a motion any witness or information not so disclosed.  *In addition to or in lieu of this sanction*, *the court*, on motion and after affording an opportunity to be heard, *may impose other appropriate sanctions*.  In addition to requiring

18

payment of reasonable expenses, including attorney's fees, caused by the
failure, these sanctions may include any of the actions authorized under
Rule 37 (b)(2)(A), (B) and (C) and may include informing the jury of the
failure to make the disclosure.

Fed. R. Civ. P. 37(c)(1) (*emphasis supplied*).  Pursuant to Rule 37, the court may also (A)

order certain facts to be taken as established, (B) prohibit the disobedient party from

supporting the designated claims or defenses, or from introducing evidence, and (C) strike

pleadings, stay proceedings, enter a default dismissal of the action or judgment, or award

monetary sanctions.  Fed. R. Civ. P. 37(b)(2)(A) – (C).

The court is not, however, limited to actual harm caused by the misconduct.  Rule

37(C)(1) sanctions are broad and encompass not only the rectification of actual harm, but

also allow for sanctions for a defendant's failure to maintain and preserve the sanctity of

the court and to respect its rules.  A district court may impose "an order treating as

contempt of court the failure to obey any orders."  *Ins. Corp. Of Ireland v. Compagnie*

*des Bauxites de Guinée*, 456 U.S. 694, 695 (1982).  Contempt may be either civil

(remedial) or criminal (punitive - to vindicate the authority of the court).  *Int'l Union,*

*United Mine Workers of Am. v. Bagwell*, 512 U.S. 821, 827-28 (1994).  A finding of

failure to comply with discovery orders is a finding of civil contempt.  *Id.* at 833.

The court also has inherent powers to impose sanctions to achieve the orderly and

expeditious disposition of cases where a party's conduct disrupts or impairs the judicial

process, especially where there is bad-faith conduct.  As the Supreme Court indicated in

*Chambers*:

> [I]t is firmly established that "[t]he power to punish for contempt is inherent in all courts."  This power reaches both the conduct before the court an that beyond the court's confines, for "[t]he underlying concern that gave rise to the contempt power was not . . . merely the disruption of court proceedings.  Rather, it was disobedience to the orders of the Judiciary, regardless of whether such disobedience interfered with the conduct of trial."
>
> \*   \*   \*
>
> When there is bad-faith conduct in the course of litigation that could be adequately sanctioned under the Rules, the court ordinarily should rely on the Rules rather than the inherent power.  But if in the informed discretion of the court, neither the statute nor the Rules are up to the task, the court may safely rely on its inherent power.  *Id.* at 50.

*Chamber v. Nasco, Inc.,* 501 U.S. 32, 44-45, 50 (1991); *see also Byrne v. Nezhat,* 261 F.3d 1075 (11th Cir. 2001).

Continental claimed at the hearing on August 18, 2005, that it should not be sanctioned because some of the PT documents identified in Exhibits A through S were produced in the *Riley* litigation in Alabama state court, and were not documents produced in this case post-trial.[13]   Continental's argument is without merit.  The sanctions under Fed. R. Civ. P. 37 are predicated upon a party's *failure* to disclose information that *should have been* disclosed pursuant to Fed. R. Civ. P. 26(a) or 26(e)(1),[14] or *failure* to amend a

---

[13]*But see* Continental's response to a post-judgment order of April 11, 2005, suggesting that it intended the documents produced in the state action to be effective for the federal action as well (Doc. # 278, p. 9).

[14]"A party is under a duty to supplement their responses at appropriate intervals (a) if the party learns that in some material respect the information disclosed is incomplete or incorrect and if the additional or

prior response to discovery as required by Fed. R. Civ. P. 26(e)(2).[15]  As further discussed below, this court finds that the large majority of the PT documents should have been disclosed in response to properly promulgated requests and prior orders of this court.

Continental also argues that sanctions should not be imposed because the property owners were not harmed given they prevailed at trial.  This argument is also without merit.  To require the property owners to prove that the verdict would have been greater if they had the benefit of the undisclosed documents would be manifestly unfair.  "[A] litigant who has engaged in misconduct is not entitled to 'the benefit of calculation, which can be little better than speculation, as to the extent of the wrong inflicted upon his opponent.'"  *Rozier v. Ford Motor Co.*, 573 F.2d 1332, 1346 (5th Cir. 1978), *citing Minneapolis, St. Paul & S.S. Marie Ry. Co. v. Moquin,* 283 U.S. 520, 521-22 (1931).[16]

In addition, Continental claims that the property owners have never linked the undisclosed information to particular discovery requests and that its prior responses were not deficient in any "material respect" (Doc. #314, p. 3).  This argument is refuted by the

---

corrective information has not otherwise been made known to the other parties during the discovery process or in writing."  Fed. R. Civ. P. 26(e)(1)(a).

[15]"A party is under a duty seasonably to amend a prior response to an interrogatory, request for production, or request for admission if the party learns that the response is in some material respect incomplete or oncorrect and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing."  Fed. R. Civ. P. 26(e)(2).

[16]In *Rosier*, 573 F.2d at 1342, the court further stated as to the defendants failure to supplement its responses: "If Ford in good faith believed that the district court's order was not intended to compel production of this document, the appropriate remedy was to seek a ruling by the district court at that point and not a year after the trial and then only when, by chance, the plaintiff learned of it."

19 analytical charts provided by the property owners, Charts A through S, which coincide with Exhibits A through S, appended to the property owners' motion to supplement the trial court record (Doc. 293-1, Doc. 316).  Each chart identifies the pertinent discovery request and attaches the specific PT document that was provided post-trial, highlighting the information that related to the request.  For example, Chart A outlined the requests made on December 13, 2001 and January 28, 2003, and indicated Continental's response to those request, as noted above.[17]  The property owners outlined other violations as they related to the balance of the PT documents (Charts B-S).  In addition, Exhibits Z, AA and DD, submitted at the November 10, 2005 hearing, outlined further abuses.  The abuses primarily pertain to emails between key company personnel, and altered or sanitized documents that revealed that CSRC exercised dominion and control over CCC.  This court now discusses more fully the violations in connection with the property owners' numerous requests both pre- and post-trial.

    *1.    Emails*

The property owners established that the post-trial discovered information included emails between key officers and employees of CCC and CSRC (Exhibits A through O).  In Exhibit A, there are questions coming from CSRC to CCC asking about bag filter problems at the plant.  In Exhibit B, there is a March 8, 2004, email from the President of Operations, Rodriguez of CCC, to a CSRC officer discussing problems with equipment

---

[17]*See supra* at pp. 6-7.

(found in daily reports–also not disclosed) at the plant.  In Exhibit C, Rodriguez informed

Pan, Wu and others of the following:

> At the present time the Phenix City Plant has a lawsuit against it alleging
> that environmental emissions have negatively impacted a community in
> Columbus, Georgia.  Among other required information, we are required by
> law to provide the opposing attorneys all correspondence (including emails)
> related to Phenix City bagfilters [*sic*].  *As you know, the opposing attorneys*
> *will take the information and try to show CCC and the Phenix City plant to*
> *the jury and public as badly as possible.  For that reason, I am asking you*
> *to not ask any more questions regarding bagfilter issues or any related*
> *environmental emission questions.  If you have a need to have more*
> *information, please call David Pacobit directly.  Or better still, please send*
> *the question via our attorney, Tony Ching (with copy to Amy Mathis, and*
> *me), so that the information can remain an attorney-client previlege* [*sic*].
>
> We apologize for this request, but it is important that we not continue to
> create a larger problem for ourselves than we already have.  If you have any
> questions, please do not hesitate to let me know.  Sorry for the
> inconvienance [*sic*].

(Doc. #293-4, Exhibit C, *emphasis supplied*).  This email alone suggests an intent by the

parties, as of March 10, 2004, to subvert the discovery process.

Continental also argued strongly in their objections to deposing Pan and Wu prior

to trial, that these officers knew nothing about environmental problems (Doc. 317-2,

Chart A, p. 10; 349:39)  The property owners persuasively argue, however, that the

collection of emails (Exhibits A through O) suggests additional communications *not*

*disclosed* regarding discussions about environmental issues and pollution control

equipment between CCC and CSRC.  An email from Rodriguez of CCC (Exhibit Q),

instructs the corporate environmental officer of CSRC, to channel SHEA weekly reports

through Ching, and to sanitize the documents for further use.  The property owners never

received the SHEA reports, which were a summary of environmental matters, either

before or after trial.

The property owners argue that the filtering of emails was clearly designed to

monitor communications between CCC and CSRC for purposes of minimizing the link, in

term of the scope of knowledge regarding defects and leaks, between the parent and its

subsidiary.  Continental's intention is made clear by Exhibit Z.  In this email, Rodriguez

sent the following message to Ching (questioned by the magistrate judge *in camera*, Doc.

305), and other executives at CCC and CSRC, including Wu and Pan:

> I think I understand how confusing it may be to have to work under
> restricted communications with CCC personnel at this time; but, it is very
> important that we maintain a specific discipline in communications because
> CCC is under very strict scrutiny by attorneys that would like nothing better
> than to be able to use CCC to get to CSRC.
>
> * * *
>
> The fact of the matter is that CCC does not have a lot of money, so if the
> opposing attorneys were to win their case against CCC, they would not
> really win much.  However, it is my understanding that *if the opposing
> attorneys were to be able to win their case against CCC and make the link
> between CCC and CSRC; then they might be able to get money from CSRC.
> At the advice of our legal people, we are making every effort to prevent the
> opposing attorneys from making the link.  This is why we have asked that
> certain subjects be run through Mr. Tony Ching, CCC's attorney.  This is
> an attempt to keep that information attorney-client privilege, which means
> that it is legally invisible to the opposing side*.  But we have to follow strict
> criteria; it must be sent to Tony Ching, copies only to those that need to
> know and no one else.  The subject matter at this time that needs to go to

24

Tony Ching is subject matter that relates to

    1.  Bag filters,
    2.  Thermal oxidizers,
    3.  Environmental issues,
    4.  *Any communications that would appear to the Courts or a trial jury that CSRC is exercising control on CCC, particularly capitol* [sic] *budget or a request for expenditures*.

Because this is one way the opposing attorneys would attempt to prove to the legal court that it is not the CCC board that controls CCC but instead, CSRC.  Therefore, we have to use caution in our communications pertaining to RFEs.

Doc. 349, Exhibit Z, *emphasis supplied; see also* Doc. 299, Exhibit J ("Communication Guidelines" for written communications relating to bag filters, thermal oxidizers, safety equipment, safety complaints, inspections or other sensitive issues, or other issues relating to litigation).

The relationship between CCC and CSRC was at the heart of the property owners' claim that the parent CSRC knew of the extent of the leakage problem at the subsidiary CCC.  Yet, the PT documents were supplied post-trial, while seeking relief from the trial court's order for  Continental to repair, rebuild and/or video monitor bag filters and thermal oxidizer equipment.  As the magistrate judge observed at the hearing on November 10, 2005, "the Court would be remiss if it did not consider the scheme or pattern identified by Judge Fuller in his order of withheld documents" (Doc. 349:4).

    2.    *Altered and "Sanitized" Documents*

25

Many documents were altered by Continental before being produced in response to orders to compel discovery. These documents included corporate environmental reports, RFEs, and plant operations reports (Doc. #293-18, 19, 20 [Exhibits Q, R & S]). It was instructed that these document also be filtered through Ching to be "sanitized" (*See* Exhibit Q). The property owners' Exhibit R, disclosed after trial, showed that CSRC knew that a component of CCC's carbon black production system had "become a potential environmental risk with it leaking daily." Yet, Continental had produced only the sanitized version prior to trial that deleted this very important information. Exhibit R was a request for expenditures, an RFE, to CSRC explaining the problems with the bag filter at the plant, and that it was leaking carbon black. The approval for repairs went up the chain of command and included approval by CSRC management (Doc. 349:48).

The property owners argue these documents provided further support of the relationship between the two corporations. Post-trial, Continental introduced these RFE documents to prove that repairs had been made. Hence, the documents were clearly relevant to the determination that the bag filter problem existed *prior to trial*, as the repairs were made thereafter (Doc. 349:50). Exhibit S identified as "operational weekly reports" dated September 12 through 18, 2002, and January 1 through 8, 2003, were other documents that were "redacted," i.e. parts of the documents were deleted prior to disclosure. One such document discussed visits by CSRC to CCC for purposes of reviewing major CCC capital projects for 2003 (Doc. 349:54). At earlier proceedings,

Continental claimed that the redacted documents were based on attorney-client privilege. It is noted that Continental denied that the documents were subject to attorney-client privilege at hearing on November 10, 2005, and none of the PT documents were referenced on the trial privilege log (Doc.349:44).

This court find that these documents were responsive to original discovery requests and subject to, at the very least, this court's order issued August 6, 2004, the Friday before trial. Hundred of documents were produced on the eve of trial, but the PT documents were not among them. The property owners argue that many of these documents went to the issue of the extent of the operational and environmental problems at CCC, and that Continental "sanitized" certain documents to keep this information from reaching the jury. This court agrees. The undersigned finds that the majority of documents, Exhibits A through S, were responsive to the property owners' pretrial discovery requests. This court also finds that those in the corporate chain of command supported the withholding of relevant evidence, that there was a scheme to withhold these documents and that there may be other undisclosed documents of a similar nature still undisclosed.

Indeed, it appears that the sequence of events throughout the litigation, in addition to the document delivery scheme between the parent corporation, CSRC and it subsidiary CCC, evidenced a deliberate choice by Continental to hide certain evidence by stonewalling and by claiming attorney-client privilege to prevent disclosure of relevant

and important evidence prior to trial.  Continental's attempt to claim mere oversight seems disingenuous given it disclosed *some* of requested documents in a *related case*, and also used the PT documents for the *purposes of staving off the injunctive relief* sought by the property owners post-trial.  After being questioned by the court, Continental admitted that it did not produce Exhibits A through M, P or Q, and only produced in part Exhibits R and S (*See* Evidentiary Submission in Compliance with this Court's Order of October 6, 2005 filed by Continental, Doc. #318).[18]

   Continental also admitted that they decided to stop supplementing prior discovery responses or disclosures at the end of December of 2003, even though they were reminded in this court's order of January 28, 2004, to exercise due diligence, to respond to requests reasonably and promptly, to avoid discovery disputes, to communicate promptly and directly when differences surface and to "cooperate as Officers of the Court with each other and with the court in the resolution of discovery disputes" (Doc. 164,  p. 2).  The court stated further in its January 28, 2004 order:

> In the interest of preserving already-scarce litigation resources for everyone, counsel are advised to apply a conciliatory - rather than adversary - approach to the resolution of their discovery disputes.  Their failure to do so will invite this court's consideration of sanctions upon the offending party or counsel.  The parties are further reminded that the Court of Appeals has upheld the award of sanctions against a law firm and its client for discovery abuses.  *See Bank Atlantic v. Blythe Eastman Paine Webber, Inc.*, 12 F.3d 1045 (11th Cir. 1994)*; Pesaplastic, C.A. v. Cincinnati Milacron Co.*, 799 F.2d 1510 (11th Cir. 1986).

---

[18]In the same submission, Continental claims documents N and O did not exist at the time of trial, and admits that R and S were produced in redacted form (Doc. 318).

These cases are instructive.  The district court in *Bank Atlantic,* ordered in part: (1) that defendant produce all witnesses and documents, (2) that defendant bear reasonable costs of plaintiff's time and preparation in filing the motion to strike and in preparing for the new trial, including the costs of expedited discovery, (3) that a $250,000 bond for plaintiff's costs ( to be determined post-trial) be obtained, (4) that defendant's asserted privileges be waived, (5) that the plaintiff be awarded triple interest if it prevailed on the merits, (6) that an instruction be given to the jury on defendant's failure to produce discovery as a factor to be considered in determining defendant's liability, and (7) that its order be published in the official reporter to deter future misconduct.  *Bank Atlantic v. Blythe Eastman Paine Webber, Inc.*, 127 F.R.D. 224, 234 (S.D. Fla, 1989).  The circuit court affirmed the district court's sanctions.  *Bank Atlantic*, 12 F.3d at 1052.

In *Pesaplastic, C.A.*, the district court held the attorneys therein to be in contempt. It awarded sanctions of reasonable expenses, including costs and attorney fees, after a hearing on  plaintiff's motion to compel, where the attorneys conducted themselves "in a manner not befitting officers of the court" and where they failed to "deal honestly and fairly with opposing counsel." 799 F.2d at 1522.  The court added:

> The attorneys of the Law Firm have clearly failed to fulfill these duties. Indeed, they represent yet another case of attorneys having "'sold out to the client.'"  *Carlucci v. Piper Aircraft Corp.*, 775 F.2d 1440, 1154 (11th Cir. 1985) . . . In so doing, the attorneys of the Law Firm lost sight of the fact that, as members of the bar, and officers of the court, or primary responsibility is not to the client, but to the legal system.  Our judicial machinery is dependent upon the full support of all members of the bench

29

and bar.  Advocacy does not include "game playing."  Conduct such as that engaged in here must not, and can not and will not be tolerated.

*Id*. at 1522-23.

The PT documents go directly to the key issues in the case.  First, they go to the issue of whether there were fugitive emissions at the plant.  Indeed, counsel for Continental argued during trial, and represented to the jury, that there were few emissions, or if there were any emissions, that they were not harmful  (Tr 1:36).  Second, they go to the issue of the relationship between the parent and it subsidiary, and the liability attributable to each.  The property owners provided detailed charts indicating how each of the documents requested were responsive to pre-trial discovery requests, motions and orders of this court.  Continental made arguments as to some of the documents but, in the end, admitted that it did not produce them.  It also did not give an adequate justification for withholding the PT documents.  This court is convinced that the majority of the PT documents requested were subject to disclosure under Fed. R. Civ. P. 26(a), 26(e)(1) and 26(e)(2) (duty to supplement) (*See* Doc. 293-1, p. 2-3), and Continental was required to make all reasonable efforts to produced them.  *Pesaplastic, C.A.,*. 799 F.2d at 1521.  Thus, it is found that Continental willfully, openly and in bad faith refused to comply with direct orders from this court.

It is further noted that defendant CSRC is making the claim on appeal that they are entitled to judgment as matter of law ("JMOL") or remittitur based on insufficiency of

evidence regarding direct liability of CSRC (Doc. #281, p. 10), a position this court notes is inconsistent with the documents withheld.  The intent of Continental on appeal is to reduce the verdict, reverse one or more components of the case or obtain a new trial.  If they are successful, Continental's strategy to withhold evidence until the post-trial stages would enure to them great benefit.  Barring that, there is still the issue of the waste of time and expense of this court in the pre- and post-trial discovery battle that has gone on for some six years.  Thus, this court has determined by a review of the record, the PT documents were relevant, intentionally withheld by officers and employees of Continental[19] and their counsel, particularly Ching; they were non-privileged and not subject to other protections.

　　　Absent from Continental's arguments is a justification as to why it was proper to force the property owners to seek court intervention over and over again, wasting huge amounts of time and money secure responses to discovery requests, when good faith compliance with the Federal Rules of Civil Procedure would have made such continuous and costly intervention unnecessary.  In fact, it appears from the record in this case, that Continental concealed their non-compliance with discovery requests and orders until after the trial, by systematically ignoring adverse rulings, and now argues post-trial that because the documents were discovered after a verdict was rendered the violations do not count.

---

[19]*See* Tr2:11-12.

31

In addition, defendant argues that, if discovery violations are found, that the appropriate remedy is a new trial.  Defendant cites to *Rozier, supra*, for the proposition that this is the *correct* remedy (and by the supposition suggests that monetary sanctions are not).  In *Rosier*, however, *the plaintiff* was requesting a new trial, and the district court had to determine whether the trial court abused its discretion by denying this request under Fed. R. Civ. P. 60(b)(3).  The district court concluded that the defendant had perpetrated a "fraud upon the court" by withholding properly requested undisclosed documents and, as such, granted a new trial to plaintiff for the egregious misconduct. *Rosier*, 573 F.2d at 1337-40.  As in the instant case, the documents were discovered post-trial.  As in the instant case, the documents were properly requested, and the court had issued orders to compel prior to the trial's inception.  The case addressed Rule 60 instead of Rule 37, but the policy considerations were the same.  The most compelling and overriding policy consideration was adherence to the discovery rules for the proper functioning of the civil litigation process in general:

> Our system of civil litigation cannot function if parties, in violation of court orders, suppress information called for upon discovery.  "Mutual knowledge of all the relevant facts gathered by both parties is essential to proper litigation.  To that end, either party may compel the other to disgorge whatever facts he has in his possession." *Hickman v. Taylor*, 329 U.S. 495, 507 (1947). . . . The way is now clear, consistent with recognized privileges, for the parties to obtain the fullest possible knowledge of the issues and facts before trial . . . The aim of these liberal discovery rules is to "make a trial less a game of blind man's bluff and more a fair contest with the basic issues and facts disclosed to the fullest practicable extent." *United States v. Procter & Gamble Co.*, 356 U.S. 677, 683 (1958). . . . It is

axiomatic that "discovery by interrogatory requires candor in responding."
*Dollar v. Long Mfg., N.C., Inc.*, 561 F.2d 613, 616 (5th Cir. 1977).

*Rosier,* 573 F.2d at 1345.

It is interesting to note that Continental is asking for one of the harshest sanction (new trial) if it is found that it violated the discovery provisions of the Federal Rules of Civil Procedure.  Since Continental lost below, this court recognizes that the defendants would possibly *prefer* a new trial because it would give them a second bite of the apple and, potentially, a different (and hopefully, smaller) outcome.  This result could actually enure to Continental's benefit, yet the goal of Rule 37 sanctions is to compensate, deter and even punish discovery violations that were committed wilfully and in bad faith. *Goodman v. New Horizons Community Service*, Slip Copy, 2006 WL 940646 (11th Cir. 2006).  In *Goodman,* the Court succinctly stated:  "Rule 37 sanctions were designed not merely to penalized those whose conduct may be deemed to warrant such a sanction, but to deter those who might be tempted to such conduct in the absence of such a deterrent." *Id., citing Carlucci*, 775 F.2d at 1447.  Granting a new trial would not necessarily be a deterrent in the instant case, unless this case is reversed on appeal.

The record is replete with motions and orders in connection with discovery requests made of Continental by the property owners.  The court in its various orders gave Continental several warnings as to their less than exemplary "established pattern of conduct."  The documents in question provide accounts of the internal discussions

33

between CCC and CSRC regarding needed  improvements and prevention of carbon black emissions at the Phenix City, Alabama plant.  The entire focus of the case revolved around whether there were carbon black emissions that affected the surrounding property owners and whether CSRC knew of the leaks and/or were involved in authorizing repairs.

It is interesting to note that, after the jury found in favor of the property owners, Continental subsequently submitted these very documents post-trial to stave off injunctive relief claiming the emissions were sporadic and isolated.  The value of the documents was evidence by Continental's reliance on them in its' post-trial arguments.  Continental has not supplied any substantial justification for withholding these documents; it stated in oral argument, "I cannot explain why those particular documents were not produced" (Tr 1:25), and that it could have been an "oversight" (Tr 1:37).  Continental admitted that it should have disclosed certain documents (Tr 1:39).   It later argues that the documents were not reviewed for relevance (Tr 1:25).  However, it is clear that Continental had plenty of time to make this analysis.

The property owners claim that they would have changed the way the case was presented at trial[20] and that it would have strengthened the record on appeal as to actual damages and punitive damages (Doc. 306, p. 10-11, 14-15).   They also argue that disclosure could have possibly shortened the trial and made settlement more likely.  They

---

[20]The property owners claim that Exhibit DD– which included a spreadsheet of every single equipment malfunction that occurred during the one-month period at all of the plants, including Phenix City– could have cut through days of trial because the charts were sent directly to top officials of CSRC (Doc. 349:18).

34

further claim, and this court agrees, that early disclosure would have undeniably saved this court valuable time, and the constant battling over disclosures wasted the courts' resources (Tr 1:32).  It is also noted that Continental had to be compelled through repeated motions and after sometime lengthy oral arguments[21] on various motions, to deliver documents that routinely should have been disclosed.   One of the last orders, done on August 6, 2004, four days before trial began, ordered Continental to produce the full text of redacted[22] documents, ADEM reports (Exhibit A), Plant Safety Assessment data and privilege logs (Exhibit H) (Doc. 195, p. 4-5).   Even at the midnight hour, Continental was contemptuous of direct orders from this court.  It was Continental's contumacy, rather than its oversight, that led to Continental's failure to disclose documents prior to trial.  In light of all this, it cannot be argued that the error was harmless.

D.    *Civil Sanctions:  Attorney Fees and Costs*

There is no question that Continental failed to comply with direct orders from this court to produce documents the property owners requested during discovery.  Plainly, the PT documents evidence a rash of violations to which Continental has no valid response. Continental admitted that it did not produce them.  The emails, alone, show a purposeful

---

[21]A total of approximately 10.5 hours were devoted just to the three hearings, January 19, 2005, August 18, 2005, and November 10, 2005.

[22]The court noted in its order of August 10, 2004, that "instead of *obliterating* the objectionable text, the defendants have apparently *omitted* the objectionable text, making it impossible to determine (1) the size of the omission, (2) the context of the omissions, or (3) the ratio between the omitted text and the full document" (Doc. 195, p. 2, emphasis in original).

scheme to prevent the property owners from discovering documents that Continental viewed as harmful to their defense of the case.  This court finds that Continental was required to produce pertinent documents contained in Exhibits A through M, P and Q, parts of R and S, as well as Exhibits DD and Z pursuant to Rule 26(a), 26(e)(1) and 26(e)(2) of the Federal Rules of Civil Procedure.

A finding of failure to comply with discovery orders is a finding of civil contempt. *Int'l Union, United Mine Workers of Am.*, 512 U.S. at 833.  Rule 37 sanctions such as attorney's fees may be imposed without a showing of willfulness or bad faith on the part of the disobedient party, however, the most severe sanctions of default judgment or dismissal cannot be imposed for violation of a discovery order caused by simple negligence, misunderstanding or inability to comply.  *Bank Atlantic*, 12 F.3d at 1049. This district court has "broad, although not unbridled, discretion in imposing sanctions" under Rule 37.  *Pesaplastic, C.A.,* 799 F.2d at 1519, citing *Dorey v. Dorey*, 609 F.2d 1128, 1135 (5th Cir. 1980).[23]  This is especially true when the court imposes monetary sanctions.  *Id.*  Failure to produce documents or individuals for deposition pursuant to motions to compel forms a sufficient basis for the award of attorney's fees.  *Id.*  A basis for the reasonableness of the fees may be determined by analyzing the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate.  *See*, *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983).

---

[23]In *Bonner v. City of Prichard*, 661 F.2d 1206, 1207 (11th Cir. 1981) (en banc) the Eleventh Circuit adopted as precedent decisions of the former Fifth Circuit rendered prior to October 1, 1981.

In connection with their motion, the property owners submitted a statement of costs that included a detailed summary of the time and expense incurred by the respective counsel for the various property owners (354-1, Exhibit A).  The parties stipulated to a $250.00 per hour rate for attorney fees.  The law firm of Beasley, *et al.*, expended 189.20 hours of time and $806.13 in expenses for a total of $48,106.13, in connection with this motion.  The law firm of Friedman, *et al.*, expended 206.50 hours and $1,386.90 in expenses, for a total of $42,852.50 (*See* Doc. 354, amended to $42,239.40 in Doc. 357). The law firm of Jackson, *et al.*, incurred 78.85 hours and $1,087.59 in expenses, for a total of $20,800.09 (*See* Doc. 354, amended to $20,400.09 in Doc. 357).

Continental claims the requested costs as submitted are objectionable for the reasons that entries prior to September 9, 2005, were not incurred in making the [supplemental] motion and further claims that "[t]he majority of the expenses claimed were incurred in preparing the Motion to Supplement the Record that was denied by the court" (Doc. 356, p. 3).  However, the district court made a finding that monetary sanctions were warranted as early as July 17, 2005, and even though it did not grant the property owners request to supplement the record, it invited them in a later order to propose specific monetary sanctions that might be appropriate.  The property owners were successful in proving that Continental violated discovery requests, (and this court made several warnings prior to trial, as well), as to Continental's pattern of disregard for the Federal Rules of Civil Procedure and this court's prior orders.  It was only a matter of this

37

court determining what, if any, monetary sanctions were appropriate under the circumstances.  While this court does not now consider pre-trial attorney's fees because the jury awarded attorney's fees for the property owners' pre-trial efforts, there is still the matter of *this court's* pre-trial efforts to resolve the many disputes concerning discovery matters initiated because Continental failed to turn over documents that in post-trial retrospect clearly should have been disclosed long before they were later discovered. There were 65 entries in the docket sheet pre-trial, and 45 post-trial.  *See, infra,* at note 25.

Continental claims that some of the entries pertain to the property owners' efforts to supplement the trial court record, relate to the injunctive relief order, and relate to mediation.  To the extent that such fees are included in the property owners' statement of cost, they are found unreasonable.[24]

Continental claims that the entries are excessive because multiple attorneys reviewed documents and attended hearings.  This court notes there were multiple property owners making claims, and the documents produced in this case were voluminous. Continental also was represented by numerous counsel who similarly reviewed documents and attended hearings.  If it were Continental's motion, this court does not doubt that it would be asking for attorney's fees for each and every counsel that participated in the work.  Therefore, the work of multiple attorneys for the property

---

[24]It is noted that the property owners voluntarily reduced their fees and expenses for these entries in their amended statement of costs (Doc. 357).

owners is found reasonable.

Continental also objects to the time spent preparing the analytical Charts A through S.  Yet, these charts were used by this court, on more than one occasion, to evaluate if violations occurred, and to determine the appropriateness of sanctions for Continental's decided failure to disclose evidence.  Continental further contends that a reasonable rate for some attorneys charge should be $185 per hour and paralegals' rate at $75 per hour (and defendant claims that paragraph 5 of the property owners' submission improperly calculates all attorney and paralegal time at $250 per hour), yet, Continental does not deny that it stipulated to a rate of $250 per hour as reasonable.  Moreover, a closer reading of the document shows the property owners did not charge paralegal time at $250 per hour.  And, the property owners claim in their brief that they were conservative in the number of junior partners and associates to which it applied this rate (Doc. 357-2, p. 5).  In light of all that has transpired, this court finds their claim credible.

E.     *Punitive Sanctions*

Though it responds to sanctions regarding attorney's fees, Continental does not provide any cogent response to the property owners' argument that the many docket sheet entries prior to and post-trial relate in one form or another to the court having to expend time and resources to address Continental's discovery abuses.[25]  Whether it would have

---

[25]The discovery related docket entries include: Docs. 81-83, 89, 91-92, 94, 96-98, 100-113, 117-118, 130, 132, 133, 140-143, 148-150, 163-166, 173-174, 178, 183, 189, 191-195, 230-234, 237-238, 253-260, 270–274, 278-280, 284, 287-288, 293, 297-302, 304, 306-308, 314, 316-319, 320, 322, 345-348, 350-353.

shortened trial is speculation, at best, considering the contentious nature of the dispute.

However, considerable time *was* spent by the district judge and his staff, the magistrate

judge and his staff, and courtroom personnel attending to the various motions and

hearings associated with discovery abuses beginning as early as October 2001.

Coercive sanctions by way of fines are generally left to the district court's discretion.   In

*Serra*, the court stated:

> The broad discretion of the district court to manage its affairs is governed,
> of course, by the most fundamental safeguard of fairness: the Due Process
> Clause of the Fifth Amendment.  *See Ins. Corp. Of Ireland*, 456 U.S. at 707,
> 102 S.Ct. at 2106-07.  To comply with the Due Process Clause, a court must
> impose sanctions that are both "just" and "specifically related to the
> particular claim" which was at issue in the order to provide discovery.

*Serra Chevrolet, Inc., v. General Motors Corp.,* 446 F.3d 1137, 1151 (11th Cir. 2006); *see*

*also In re Grand Jury Subpoena Duces Tecum,* 955 F.2d 670, 673 (11th Cir. 1992) (The

imposition of a coercive fine is proper for failure to produce documents, and will not be

reversed except for an abuse of discretion).  The fine for misconduct must be based on the

record evidence and a rationale.  *Carlucci* , 775 F.2d at 1146.  The cost to the court of the

numerous motions, hearings, and orders are an appropriate consideration.  There must be,

however, some reasonable basis for the accounting of costs and a record of its reasons for

the imposition of any fine.  *Serra*, 46 F.3d at 1152.

In light of the requirements of *Serra* and *Carlucci*, this court has calculated its

approximate time from the date of its last order to compel, August 8, 2004 (Doc. 192).

40

By that date, all of the PT documents should have been disclosed to the property owners. The rest of the time calculated by this court pertains to post-trial discovery orders and recommendations regarding the PT documents (*See* Appendix I, attached, itemizing the court's time for the various entries on the docket sheet pertaining to the evidence wrongfully withheld).  Over one hundred hours were spent by this court and its personnel addressing issues relating to the PT documents post-trial.  As $250.00 per hour was considered a reasonable rate for counsel's efforts, it is at least as reasonable for the judges' and their staffs' efforts.  Many hours were spent issuing orders, conducting hearings and conferences, reading through transcripts and the immense volume of motions, briefs and exhibits.  As to the hearings themselves, a court reporter and courtroom deputy also had to be present for the ten-and-a-half hours that were spent listening to the arguments of the parties.  Comparable to paralegals, we find that $75.00 per hour is reasonable for the time expended for other courtroom personnel.  While the estimated time is not exhaustive of all the court's resources expended to address the egregious discovery abuses, and only considers a small portion of the time spent *pre-trial*, it allows some reasonable basis to account for the imposition of additional fines against the offending party.

### III. CONCLUSION

This court concludes that Continental withheld evidence in bad faith and in violation of prior orders of this court.  As a result, because of Continental's discovery

violations, the property owners have been prejudiced in their presentation of the evidence to the jury, and on appeal.

Thus, based upon consideration of the property owners' objections and motion to reconsider the magistrate judge's order denying sanctions (Doc. 346), and the district court's order (Doc. 347, instructing this court also to consider Docs. 293, 308, 308-1), and for good cause shown, it is the RECOMMENDATION of the magistrate judge:

1.    that the Motion be GRANTED;

2.    that sanctions be imposed against CCC and CSRC, jointly and severally, in the amount of $120,945.59, for attorney fees and costs (itemized above) of the property owners' time and expense to pursue post-trial litigation in regard to the PT documents;

3.    that additional sanctions be imposed against CCC and CSRC, jointly and severally, in the amount of $26,470.00 for the time and effort spent by the court and its staff from August 8, 2004, in connection with the ongoing litigation of discovery abuses;

4.    that the additional sanctions of $26,470.00 is to be paid to the clerk of the court;

5.    that this Recommendation be published in the official reporter to deter further misconduct by Continental and like-minded third parties, including litigants and attorneys alike;

42

It is further

ORDERED that on or before June 26, 2007 the parties may file objections to the Recommendation. Any objections filed must specifically identify the findings in the magistrate judge's Recommendation to which the party is objecting. Frivolous, conclusive or general objections will not be considered by the district court. The parties are advised that this Recommendation is not a final order of the court and, therefore, it is not appealable.

Failure to file written objections to the proposed findings and advisements in the magistrate judge's Recommendation shall bar the party from a de novo determination by the district court of issues covered in the Recommendation and shall bar the party from attacking on appeal factual findings in the Recommendation accepted or adopted by the district court except upon grounds of plain error or manifest injustice. *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982). *See Stein v. Reynolds Securities, Inc.*, 667 F.2d 33 (11th Cir. 1982); *see also*, *Bonner , supra,* adopting as binding precedent all of the

decisions of the former Fifth Circuit handed down prior to the close of business on

September 30, 1981.

DONE this 13th day of June, 2007.

/s/ Wallace Capel, Jr.
WALLACE CAPEL, JR.
UNITED STATES MAGISTRATE JUDGE

## APPENDIX I -
## HOURS REGARDING POST-TRIAL MOTION

08/06/2004     *193    Minute Entry for proceedings held before Judge Vanzetta P.        10.50
McPherson : Discovery Motion Hearing held on 8/6/2004 re 178 MOTION to
Compel and 191 MOTION for Protective Order filed by Continental Carbon
Incorporated. (Digital Recording: 1:39 to 3:17) (sl, ) (Entered: 08/09/2004)

08/10/2004     *195    ORDERED that the defendant's 194 Objection to and Appeal       2.00
of the Magistrate Judge's 8/6/04 192 Order is OVERRULED and the challenged
ruling of Magistrate Judge McPherson is AFFIRMED. The parties are hereby
advised that failure to fully comply with the letter and the spirit of the 8/10/04 Order
will result in the imposition of sanctions which will be swift in coming and painful
in execution. . Signed by Judge Mark E. Fuller on 08/10/04. (sl, ) (Entered:
08/10/2004)

10/22/2004     *231    ORDER re 230 MOTION to Strike and MOTION for                     1.00
Sanctions filed by The City of Columbus, Ga, Action Marine, Inc., John Tharpe,
Owen Ditchfield. Brief in Support due by 11/3/2004 for plaintiffs; Show Cause
Response due by 11/17/2004 for defendants as to why the motions should not be
granted. Signed by Judge Mark E. Fuller on 10/22/04. (cc, ) (Entered: 10/22/2004)

01/06/2005     *234    ORDERED that a hearing be held on 1/19/2005 at 1:00 PM           .50
at the United States Courthouse, One Church Street, Courtroom 2A, Montgomery,
AL. The parties should be prepared to address the merits of the plaintff's pending
requests for injunctive relief and the 230 Motion to Strike Certain Defense Exhibits
Wrongfully Withheld in Discovery and Request5 for Sanctions. Signed by Judge
Mark E. Fuller on 01/06/05. (sl, ) (Entered: 01/06/2005)

01/31/2005     *238    ORDER denying 230 Motion to Strike certain defense             2.00
exhibits wrongfully withheld in discovery; denying 230 Motion for Sanctions .
Signed by Judge Mark E. Fuller on 01/31/05. (mfm, ) (Entered: 01/31/2005)

02/17/2005     *TRANSCRIPT of Motions Hearing held on 1/19/05 in
Montgomery, AL before Judge Mark E. Fuller. Court Reporter: James R. Dickens.
(sl, ) (Entered: 02/18/2005)

2/21/2005     *253    First MOTION To Shorten Time for Response to
Interrogatories and Request for Production of Documents by The City of Columbus,
Ga, Owen Ditchfield, John Tharpe. (Friedman, Jeffrey) (Entered: 02/21/2005)

02/24/2005     *254    ORDERED that the 253 Motion to Shorten Time for                1.0
Resposne to Interrogatories and Request for Production of Documents is granted in
part and denied in part. Accordingly, the defendants shall serve copies of their
responses upon counsel for the plaintiffs on or before 3/1/05 . Signed by Judge
Vanzetta P. McPherson on 2/24/05. (sl, ) (Entered: 02/24/2005)

02/24/2005    *255    MOTION for Protective Order to Quash Plaintiffs' Post-Trial
Consolidated Discovery Requests, or, in the Alternative, to Deny Plaintiffs' Motion
to Shorten Time for Response to Interrogatories and Request for Production of
Documents by Continental Carbon Incorporated. (sl, ) (Entered: 02/25/2005)

02/24/2005    *256    MEMORANDUM of Law in Support of 255 MOTION for
Protective Order to Quash Plaintiffs' Post-Trial Consolidated Discovery Requests,
or, in the Alternative, to Deny Plaintiffs' Motion to Shorten Time for Response to
Interrogatories and Request for Production of Documents filed by Continental
Carbon Incorporated. (sl, ) (Entered: 02/25/2005)

02/24/2005    *258    MEMORANDUM of Law in Support of 257 MOTION for
Protective Order to Quash Plaintiffs' Post-Trial Consolidated Discovery Requests,
or in the Alternative, to Deny Plaintiffs' Motion to Shorten Time for Response to
Interrogatories and Request for Production of Documents filed by China Synthetic
Rubber Corporation. (sl, ) (Entered: 02/25/2005)

02/25/2005    *MOTIONS REFERRED 255 MOTION for Protective Order, 257
MOTION for Protective Order REFERRED to Judge McPherson. (sl, ) (Entered:
02/25/2005)

03/01/2005    *259    RESPONSES (Objection) to plaintiffs' First Post-Trial
Consolidated Discovery Requests by Continental Carbon Incorporated. (sl, )
(Entered: 03/02/2005)

03/01/2005    *260    RESPONSES (Objection) to plaintiffs' First Post-Trial
Consolidated Discovery Requests by China Synthetic Rubber Corporation. (sl, )
(Entered: 03/02/2005)

03/28/2005    *270    ORDERED that the 253 First MOTION To Shorten Time        .50
requesting an order that the defendant be required to respond to the post-judgment
interrogatories and request for production by the end of February 2005 is denied as
moot as further set out. Signed by Judge Vanzetta P. McPherson on 3/28/05. (sl, )
(Entered: 03/28/2005)

03/28/2005    *271    ORDERED that (1) the 255 Motion for Protective Order is        .50
denied as moot; (2) the 255 Motion to deny the motion to shorten time is denied.
The court has entered an order denying the motion to shorten time as moot. Signed
by Judge Vanzetta P. McPherson on 3/28/05. (sl, ) (Entered: 03/28/2005)

03/28/2005    *272    ORDERED that (1) the 257 Motion for Protective Order is
denied as moot; (2) the 257 Motion to deny the motion to shorten time is denied.
The court has entered an order denying the motion to shorten time as moot. Signed
by Judge Vanzetta P. McPherson on 3/28/05. (sl, ) (Entered: 03/28/2005)

04/04/2005   *273   First MOTION to Compel Post Trial Discovery by The City of Columbus, Ga, Owen Ditchfield, Action Marine, Inc., John Tharpe. (Attachments: # 1 # 2)(Friedman, Jeffrey) (Entered: 04/04/2005)

04/05/2005   *   MOTIONS 273 First MOTION to Compel Post Trial Discovery REFERRED to Judge McPherson. (sl, ) (Entered: 04/05/2005)

04/05/2005   *274   ORDERED as follows: (1) on or before 4/11/05, the plaintiff shall file a Notice in response to this order as further set out; (2) on or before 4/12/05, the defendants shall file with the Clerk of the court a response to the 273 MOTION to Compel Discovery. Defendants are specifically directed to file separate responses and to number their responses parallel to the discovery requests; (3) the court shall conduct ORAL ARGUMENT on the 273 motion on 4/14/05 at 2:00 p.m. in Courtroom 5A, Frank M. Johnson, Jr United States Courthouse Complex, One Church Street, Montgomery, AL. Counsel for the parties shall appear at the argument. Signed by Judge Vanzetta P. McPherson on 4/5/05. (sl, ) (Entered: 04/05/2005)                                                                1.00

04/11/2005   *276   NOTICE by The City of Columbus, Ga, Owen Ditchfield, Action Marine, Inc., John Tharpe re 274 Order,,, Set Deadlines/Hearings,, In Response to Magistrates Discovery Order (Attachments: # 1 # 2)(Friedman, Jeffrey) (Entered: 04/11/2005)

04/12/2005   *278   RESPONSE to 273 First MOTION to Compel Discovery Response filed by Continental Carbon Incorporated, China Synthetic Rubber Corporation. (sl, ) (Entered: 04/13/2005)

04/13/2005   *279   ORDERED that the oral arguments set for 4/14/05 at 2:00 p.m. before Judge Vanzetta Penn McPherson is continued generally until further orders of the court. Signed by Judge Vanzetta P. McPherson on 4/13/05. (sl, ) (Entered: 04/13/2005)                                                                .50

04/15/2005   *280   ORDERED as follows: (1) Oral argument on the 273 MOTION to Compel is RESET from 4/14/05 to 4/22/05 at 11:00 a.m. in Courtroom 5A, Frank M. Johnson, Jr. United States Courthouse Complex, One Church Street, Montgomery, AL; (2) the Clerk is directed to provide a court reporter for this proceeding. Signed by Judge Vanzetta P. McPherson on 4/15/05. (sl, ) (Entered: 04/15/2005)                                                                .50

04/21/2005   *282   RESPONSE in Opposition re 275 MOTION for Order  re Injunctive Relief filed by All Plaintiffs. (Attachments: # 1 Exhibit 1# 2 Exhibit 2# 3 Exhibit 3# 4 Exhibit 4# 5 Exhibit 5# 6 Exhibit 6# 7 Exhibit 7# 8 Exhibit 8# 9 Exhibit 9# 10 Exhibit 10)(Byrne, David) (Entered: 04/21/2005)

04/22/2005   *284   Minute Entry for proceedings held before Judge Vanzetta P.

McPherson : Oral Argument on Post Trial M/to Compel held on 4/22/2005.
(Recording Time 11:05 a.m. - 12:07 p.m..) (sl, ) (Entered: 04/22/2005)

5/17/2005      *288    ORDERED that the 273 Motion to Compel Post Trial          2.00
Discovery is GRANTED in part and DENIED in part as further set out in order. The   Dep. 2.00
defendants shall produce Wu and Lee for depositions at a mutually convenient time   CtRpt. 2.00
and location. Subject to extenuating circumstances, such as illness, Wu's deposition
shall take place within the United States. Signed by Judge Vanzetta P. McPherson
on 5/17/05. (sl, ) (Entered: 05/17/2005)

07/01/2005      *293    BRIEF/MEMORANDUM in Support OF PLAINTIFFS'
MOTION TO SUPPLEMENT THE TRIAL COURT RECORD WITH EVIDENCE
WRONGFULLY WITHHELD BY DEFENDANTS FROM PRETRIAL
DISCOVERY filed by All Plaintiffs. (Attachments: # 1 Exhibit A# 2 Exhibit B# 3
Exhibit C# 4 Exhibit D# 5 Exhibit E# 6 Exhibit F# 7 Exhibit G# 8 Exhibit H# 9
Exhibit I# 10 Exhibit J# 11 Exhibit K# 12 Exhibit L# 13 Exhibit M# 14 Exhibit N#
15 Exhibit O# 16 Exhibit P# 17 Exhibit Q# 18 Exhibit R# 19 Exhibit S# 20 Exhibit
T# 21 Exhibit U# 22 Exhibit V# 23 Exhibit W# 24 Exhibit X# 25 Exhibit
Y)(Byrne, David) Modified on 7/5/2005 to create relation to motion filed 7/1/05
contained within this pleading (qc/djy, ). (Entered: 07/01/2005)

07/01/2005      *      MOTION to supplement the trial court record with evidence
wrongfully withheld by defendants from pretrial discovery by All Plaintiffs (NO
PDF document attached to this notice-See Docket Entry 293). (djy, ) (Entered:
07/05/2005)

07/06/2005      *297    ORDERED as follows: (1) on or before 7/15/05, plaintiffs       1.50
must file a memorandum or brief citing the specific legal authority for the relief
requested in their 293 Motion to Supplement the Trial Court Record with Evidence
Wrongfully Withheld by Defendants from Pretrial Discovery; (2) on or before
7/25/05, defendants must show cause why the 293 Motion should not be granted;
(3) on or before 7/29/05, plaintiffs may file a reply brief; (4) plaintiffs' 293 Motion
is set for a hearing on 8/8/2005 at 9:00 AM in Courtroom 2A of the United States
District Courthouse in Montgomery, AL; (5) Anthony Ching and Juan D. Rodriguez
are ORDERED to be present for the 8/8/05 hearing in Montgomery, AL. Signed by
Judge Mark E. Fuller on 7/6/05. (sl, ) (Entered: 07/06/2005)

07/13/2005      *298    ORDER continuing Hearing on MOTION to supplement the       1.00
trial court record with evidence wrongfully withheld by defendants from pretrial
discovery: Motion Hearing reset from 8/8/2005 @ 9:00 am to 8/18/2005 10:00 AM
in Courtroom 2A before Hon. Chief Judge Mark E. Fuller, USC, Montgomery, AL..
Signed by Judge Mark E. Fuller on 7/13/05. Furnished to YG, HC & KG.(djy, )
(Entered: 07/13/2005)

07/15/2005    *299    BRIEF/MEMORANDUM in Support re 293 MOTION TO
SUPPLEMENT THE TRIAL COURT RECORD WITH EVIDENCE
WRONGFULLY WITHHELD BY DEFENDANTS FROM PRETRIAL
DISCOVERY filed by All Plaintiffs. (Attachments: # 1 Exhibit 1# 2 Exhibit 2# 3
Exhibit 3#4 Exhibit 4# 5 Exhibit 5# 6 Exhibit 6# 7 Exhibit 7# 8 Exhibit 8# 9
Exhibit 9# 10 Exhibit 10# 11 Exhibit 11# 12 Exhibit 12# 13 Exhibit 13# 14 Exhibit
14# 15 Exhibit 15# 16 Exhibit 16# 17 Exhibit 17# 18 Exhibit 18# 19 Exhibit
19)(Byrne, David) (Entered: 07/15/2005)

07/21/2005    *300    MOTION to Modify re 297 Order Setting Hearing on
Motion, Set Deadlines by Continental Carbon Incorporated, China Synthetic Rubber
Corporation. (vmc, ) (Entered: 07/22/2005)

07/22/2005    *301    ORDER granting 300 MOTION to Modify Scheduling        1.00
Order; Defendants' Response to Motion due by 8/1/2005 for MOTION to
supplement the trial court record; plaintiff may file a response on or before
8/8/2005. Signed by Judge Mark E. Fuller on 7/22/2005. (cc, ) (Entered:
07/22/2005)
08/01/2005    *302    RESPONSE in Opposition to plaintiffs'268 MOTION to
Supplement the Trial Record filed by Continental Carbon Incorporated, China
Synthetic Rubber Corporation. (sl, ) (Entered: 08/02/2005)

8/18/2005    *304    Minute Entry for proceedings held before Judge Mark E.        5.50
Fuller : Motion Hearing held on 8/18/2005 re MOTION to supplement the trial    Dep.  5.50
court record with evidence wrongfully withheld by defendants from pretrial    CtRpt. 5.50
discovery filed by All Plaintiffs,. (Court Reporter James R. Dickens.) (kcg, )
(Entered: 08/18/2005)

08/18/2005    *305    Minute Entry for proceedings held before Judge Mark E.
Fuller : In Camera Hearing held and maintained UNDER SEAL on 8/18/2005.
[Minutes, Exhibits and Witness List mainainted with court file in SEAL
ENVELOPE] (No PDF Attached) (Court Reporter James R. Dickens.) (kcg, )
(Entered: 08/18/2005)

08/19/2005    *306    ORDER denying 293 Motion to Supplement the Trial Court    3.00
Record with Evidence Wrongfully Withheld by defendants from Pretrial Discovery
to the extent that it seeks any relief other than an award of monetary sanctions. To
the extent that plaintiffs' Motion to Supplement the Trial Court Record with
Evidence Wrongfully Withheld by defendants from Pretrial Discovery seeks an
award of monetary sanctions, this matter is referred to Magistrate Judge McPherson
for a ruling on this matter as it is in essence a ruling relating to discovery. The
parties are advised that Magistrate Judge McPherson may or may not wish them to
provide further written argument or to appear at another hearing on the matter but
will leave such matters within her sound discretion. Signed by Judge Mark E. Fuller
on 8/19/05. (sl, ) (Entered: 08/19/2005)

09/09/2005    *307   ORDERED as follows: (1) on or before 9/16/05, the plaintiff       2.00
are directed to file a supplemental motion for sanctions pursuant to Rule 37 of the
FRCP, which shall include, but shall not be limited to, (a) a request for a definite
sum; (b) an itemization of the attorney fees incurred in making the motion; and (c)
an itemization of the reasonable expenses incurred in making the motion; (2) on or
before 9/30/05, the defendants shall file their response to the motion for monetary
sanctions and their brief in support of their response. Signed by Judge Vanzetta P.
McPherson on 9/9/05. (sl, ) (Entered: 09/09/2005)

09/16/2005    *308   Supplemental MOTION for Sanctions and Submission
Pursuant to Magistrate Judge McPherson's Order of September 9, 2005 by All
Plaintiffs. (Attachments: # 1 Exhibit A-1# 2 Exhibit A-2# 3 Exhibit A-3)(Friedman,
Jeffrey) (Entered: 09/16/2005)

09/16/2005    *      TRANSCRIPT of Oral Argument on Motion to Supplement
Trial Court Record and For Sanctions held on 8/18/05 before Judge Mark E. Fuller.
Court Reporter: James R. Dickens. (sl, ) (Entered: 09/19/2005)

09/30/2005    *313   ORDER setting Status Conference for 10/3/2005 at 11:00       1.00
AM by conference call arranged by counsel for the plaintiff. Signed by Judge Mark
E. Fuller on 9/30/05. (sl, ) (Entered: 09/30/2005)

09/30/2005    *314   BRIEF/MEMORANDUM in Opposition To Plaintiffs 308
Supplemental Motion for Sanctions filed by All Defendants. (Fruin, Peter) (Entered:
09/30/2005)

10/03/2005    *      Minute Entry for proceedings held before Judge Mark E.       1.00
Fuller : Telephone Status Conference held on 10/3/2005. (no pdf is attached) (kcg, )
(Entered: 11/09/2005)

10/06/2005    *316   ORDER that on or before 21 October 2005, the plaintiff shall    1.00
file with the Clerk of the court 19 individualized analytical charts, labeled Chart A
through Chart S, to coincide with Exhibits A through S, appended to the Motion To
Supplement The Trial Court Record (293-1), as set out; that on or before 4
November 2005, the defendants shall file with the Clerk of the court a Notice
Regarding Withheld Documents, as set out; that a Motion Hearing is set for
11/10/2005 09:00 AM in Courtroom 5A before Honorable Vanzetta P. McPherson
on Motion for Sanctions . Signed by Judge Vanzetta P. McPherson on 10/6/2005.
(cc, ) (Entered: 10/06/2005)

10/24/2005    *317   Response to Order 316re 293 BRIEF/MEMORANDUM in
Support,, Plaintiffs' Motion to Supplement the Trial Court Record with Evidence
Wrongfully Withheld By Defendants from Pretrial Discovery by The City of
Columbus, Ga, Owen Ditchfield, Action Marine, Inc., John Tharpe. (Attachments: #
1 Supplement Chart A# 2 Supplement Chart B# 3 Supplement Chart C# 4

Supplement Chart D# 5 Supplement Chart E# 6 Supplement Chart F# 7 Supplement
Chart G# 8 Supplement Chart H# 9 Supplement Chart I# 10 Supplement Chart J#
11 Supplement Chart K# 12 Supplement Chart L# 13 Supplement Chart M# 14
Supplement Chart N# 15 Supplement Chart O# 16 Supplement Chart P# 17
Supplement Chart Q# 18 Exhibit Chart R# 19 Supplement Chart S)(Byrne, David)
Modified on 10/24/2005 to create a docket relationship to 316 Order(sl, ). (Entered:
10/24/2005)


11/04/2005    *318   Evidentiary Submission in Compliance with This Court's
Order of October 6, 2005 filed by Continental Carbon Incorporated. (Brady,
Clifford) (Entered: 11/04/2005)


11/10/2005    *319   Minute Entry for proceedings held before Judge Vanzetta P.                2.50
McPherson : Motion Hearing held on 11/10/2005 re 308 Supplemental MOTION       Dep.   2.50
for Sanctions and Submission Pursuant to Magistrate Judge McPherson's Order of   CtRpt  2.50
September 9, 2005 filed by All Plaintiffs. (Court Reporter Risa Entrekin.)
(Attachments: # 1 Exhibit List) (war ) (Entered: 11/14/2005)


11/10/2005    *   NOTICE of Correction: Exhibit List attached to Minutes of
Motion for Sanctions Hearing held on ll/l0/05 was inadvertently listed as
Defendants' Exhibit List; Document should indicate Plaintiff's Exhibit List (NO
PDF ATTACHED) (war ) (Entered: 11/21/2005)


11/21/2005    *320   RESPONSE to Motion re 308 Supplemental MOTION for
Sanctions and Submission Pursuant to Magistrate Judge McPherson's Order of
September 9, 2005, MOTION to supplement the trial court record with evidence
wrongfully withheld by defendants from pretrial discovery filed by All Defendants.
(Brady, Clifford) (Entered: 11/21/2005)


11/22/2005    *321   MOTION for Extension of Time to File Response/Reply by
All Plaintiffs. (Friedman, Jeffrey) (Entered: 11/22/2005)


11/22/2005    *322   Response to Order Plaintiffs' Supplemental Submission
Pursuant to Magistrate Judge McPherson's Instruction of November 10, 2005 by All
Plaintiffs. (Attachments: # 1 Exhibit A# 2 Exhibit B# 3 Exhibit C)(Friedman,
Jeffrey) (Entered: 11/22/2005)


01/31/2006    *   MOTIONS 308 Supplemental MOTION for Sanctions and
Submission Pursuant to Magistrate Judge McPherson's Order of September 9, 2005,
321 MOTION for Extension of Time to File Response/Reply REFERRED to Judge
Judge McPherson. (sl, ) (Entered: 01/31/2006)


02/07/2006    *324   ORDER granting plaintiffs' 321 Motion to File Response out            .50

of Time. Signed by Judge Vanzetta P. McPherson on 2/7/06. (sl, )11 (Entered: 02/07/2006)

04/04/2006    *    TRANSCRIPT filed of Discovery Hearing held 8/6/04 before Judge Vanzetta McPherson, re 06-11311-D, 326 Notice of Appeal, 325 Notice of Appeal Court Reporter: James Dickens. (ydw, ) (Entered: 04/05/2006)

10/11/2006    *345    [VACATED PURSUANT TO 347 ORDER FILED 11/28/06] ORDER denying 308 Motion for Sanctions as further set out in order. Signed by Judge Vanzetta P. McPherson on 10/11/06. (sl, ) Modified on 11/28/2006 (sl, ). (Entered: 10/11/2006)

10/20/2006    *346    Objection to re 345 Order on Motion for Sanctions and Motion to Reconsider filed by The City of Columbus, Ga, Owen Ditchfield, Action Marine, Inc., John Tharpe. (Byrne, David) (Entered: 10/20/2006)

10/20/2006    *    MOTION to Reconsider re 345 Order. (This document has no pdf attached. See 346 for pdf.) (sl, ) (Entered: 10/23/2006)

11/28/2006    *347    ORDERED as follows: (1) the 345 Order filed 10/11/06 is    2.00
VACATED; (2) all issues relating to the appropriateness of monetary sanctions against defendants raised by plaintiffs' 293 308 and [308-1] motions and all submissions in support of plaintiffs' request for monetary sactions as a penalty for alleged discovery violations are hereby referred to United States Magistrate Judge Wallace Capel, Jr. Signed by Judge Mark E. Fuller on 11/28/06. (sl, ) (Entered: 11/28/2006)

11/28/2006    ***Reopen Document 308 Supplemental MOTION for Sanctions (PURSUANT TO 347 ORDER) (sl, ) (Entered: 11/28/2006)

11/28/2006    *MOTIONS 308 Supplemental MOTION for Sanctions and Submission Pursuant to Magistrate Judge McPherson's Order of September 9, 2005 REFERRED to Judge Judge Capel. (sl, ) (Entered: 11/28/2006)

11/28/2006    *Judge Wallace Capel, Jr added to case due to the retirement of Judge Vanzetta P McPherson who is no longer assigned to case and pursuant to 347 Order. (cc, ) (Entered: 11/29/2006)

12/04/2006    *348    ORDERED: (1) the parties shall be available for a telephone    2.00
conference call on 1/5/07 at 10:00 a.m. to be arranged by counsel for the defendants; (2) the parties shall appear for a hearing on 1/22/07 at 10:00 a.m. in Courtroom 5A, Montgomery, AL; and the Clerk is directed to provide a court reporter for this hearing. Signed by Judge Wallace Capel Jr. on 12/4/06. (sl, )

12/04/2006      *Set Telephone Conference for 1/5/2007 at 10:00 AM before Honorable Wallace Capel Jr. pursuant to 348 Order. (sl, ) (Entered: 12/04/2006)

12/05/2006      *349   TRANSCRIPT of Proceedings re: Motion Hearing (PDF available for court use only) held on November 10, 2005 before Judge Vanzetta Penn McPherson. Court Reporter: Risa L. Entrekin. (sl, ) (Entered: 12/06/2006)

12/06/2006      *350   MOTION for Reconsideration re 347 Order,, Terminate Motions, Vacating Magistrate Judge's Order Denying Monetary Sanctions by All Defendants. (Attachments: # 1 Exhibit Exhibit A - Declaration of Peter S. Fruin# 2 Exhibit Exhibit B - Transcript)(Fruin, Peter) (Entered: 12/06/2006)

12/18/2006      *351   ORDER denying 350 Motion for Reconsideration as further set out. Signed by Judge Mark E. Fuller on 12/18/2006. (cb, ) (Entered: 12/18/2006)            .50

01/05/2007      *352   Minute Entry for proceedings held before Judge Wallace Capel Jr.: Telephone Conference held on 1/5/2007. (Court Reporter Jimmy Dickens.) (war, ) (Entered: 01/05/2007)            1.50            1.00

01/05/2007      *353   ORDERED that the hearing set for 1/22/07 is CANCELLED. The parties shall file a detailed statement of costs within five day and any objections should be filed within five days thereafter. The court will consider no other documents after that point. Signed by Judge Wallace Capel Jr. on 1/5/07. (sl, ) (Entered: 01/05/2007)

01/05/2007           ***Hearing set for 1/22/07 cancelled pursuant to 353 Order entered on 1/7/07. (sl, ) (Entered: 01/05/2007)

01/12/2007      *354   Evidentiary Submission re 353 Order,, Terminate Deadlines and Hearings, Plaintiffs' Statement of Costs Related to Their Motion for Sanctions filed by The City of Columbus, Ga, Owen Ditchfield, Action Marine, Inc., John Tharpe. (Attachments: # 1 Exhibit A (Plaintiffs' Counsel Time Records))(Byrne, David) (Entered: 01/12/2007)

01/22/2007      *356   Objection to re 354 Evidentiary Submission, and Statement of Costs filed by All Defendants. (Fruin, Peter) (Entered: 01/22/2007)

02/05/2007      *357   MOTION for Leave to File Amended Statement of Costs and to File a Response to Defendants' Objections to Plaintiffs' Statement of Costs by The City of Columbus, Ga, Owen Ditchfield, Action Marine, Inc., John Tharpe. (Attachments: # 1 Exhibit A to Motion for Leave)(Friedman, Jeffrey) (Entered: 02/05/2007)

02/05/2007      *358   ORDER granting 357 Motion for Leave to File amended Statement of Costs and to File a Response to defendants' Objections to plaintiffs'

Statement of Costs. The Clerk is directed to file Exhibit A attached to document       .50
357 as a separate document entry in the court record. Signed by Judge Wallace
Capel Jr. on 2/5/07. (sl, ) (Entered: 02/05/2007)


02/05/2007    *359    RESPONSE to defendants' 356 Objection to plaintiffs'
Statement of Costs by Plaintiffs (pursuant to 358 Order). (sl, ) (Entered:
02/05/2007)


07/12/07        Report and Recommendation of the Magistrate Judge       42.00


Total Judge and chambers times                                        100.00
Total Court Reporter time                                              10.50
Total Courtroom deputy time                                            10.50